EDWARD P. KIRBY, Exr., etc.

*v.*

GEORGE WILSON *et al.*

*Filed at Springfield March 21, 1881.*

1. INSTRUCTION—*as assuming only one question of fact in the case.* An instruction, telling the jury that it is a question of fact to be by them determined, whether any part, and if so, how much, of the proceeds of the sale of cattle belonging to another, the claimant, came into the hands of the executor of the estate of the person making the sale, after the death of the latter, in a suit against the executor to recover such proceeds, is not to be understood as declaring that to be the only question of fact submitted to the jury for consideration.

2. SAME—*copying from former opinion on second trial.* Where the evidence on the second trial of a case is substantially the same as on the first trial, except being somewhat fuller on some points, the difference not being such as to change the rule of law governing the case, there will be no error in copying an instruction largely from the opinion of this court in passing upon the merits of the first trial.

3. SAME—*when not acted on by the jury, no error sufficient to reverse.* An instruction that the jury might find for the plaintiff the whole amount claimed, in a suit to recover the proceeds of the sale of a lot of cattle, if they should find, from the evidence, that the deceased at a certain time sold a number of the plaintiff's cattle in a particular place named, and retained the money on his person until his death, etc., when the jury give the plaintiff no part of the proceeds of the sale at that place, but only of the proceeds of the sale at another place, even if erroneous, affords no ground of reversal, as the court can see it did not mislead the jury.

4. ADMINISTRATION—*preference of claim.* Where a person sells the cattle of another, as his agent, under a contract, and receives and retains the purchase money until his death, it becomes the money of the owner of the cattle, as the substitute or representative of the cattle, and the fact that the widow of the person so selling, during his illness, or after his death, takes such funds and deposits the same in bank in her own name, and afterwards gives her check for the same to her husband's executor, will not destroy the identity of the fund, and make it subject to the general creditors of the testator, but the owner of the cattle so sold will have a preference over the other general creditors of the estate. In such case it is not necessary that the identical bills received by the testator should have come into the hands of his executor.

5. ERROR—*when no ground of reversal.* On the trial of a claim against an estate, in which a preference was claimed over the general creditors, the court admitted testimony showing the insolvency of the estate. It was *held,* that while such evidence had no legitimate bearing upon the case, and was improper, its admission formed no ground for a reversal of the judgment, as it could do the plaintiff no harm.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for the appellant:

While this court will not examine the evidence to see if the verdict is supported by it, the affirmance of the judgment

16—98 ILL.

below by the Appellate Court, being a finding of the facts, (*Brownell* v. *Welch*, 91 Ill. 523,) yet this court will look at the evidence to see if the trial court ruled properly on the instructions.   *O., O. & F. R. R. Co.* v. *McMath*, 91 Ill. 104; *Wabash R. R. Co* v. *Hanks*, id. 406.

That the money in the hands of Alexander, at the time of his death, was not held in trust for the plaintiffs and should not have been allowed as a sixth class claim, we cite *Wilson* v. *Kirby*, 88 Ill. 566; *Wier* v. *Gand*, id. 450; *Silsby et al.* v. *McCoon*, 3 N. Y. 379; *In re Hosie*, 7 N. B. R. 601; *Ex parte Sayers*, 5 Ves. Jr. 169.

As to whether the identity of the fund was lost by Mrs. Alexander depositing the money in bank, and checking the same out to the executor, see *Wilson* v. *Kirby*, 88 Ill. 566; *Oliver* v. *Pyatt*, 3 How. 401; *West of England and South Wales District Bank*, 40 Law Times (N. S.) 712; *Whitcomb* v. *Jacobs*, 1 Rolle, 160; *Ryall* v. *Rolle*, 1 Atkyns, 172; *Ex parte Dumas*, id. 234; *Scott* v. *Sumon*, Willis, 403; *Taylor* v. *Plumer*, 3 M. & Sel. 562; *Cook* v. *Tullis*, 18 Wall. 332; *Trecothic* v. *Austin*, 4 Mason, 16; 2 Redf. on Wills, 205, sec. 11; *Kent* v. *Murgatroyd*, 1 Johns. Ch. 128; *Kip* v. *Bank of New York*, 10 J. R. 63; *Lock* v. *Kerison*, 6 Tenn. 227.

Mr. WILLIAM BROWN, and Mr. R. D. RUSSELL, for the appellee, contended that the money received by Alexander for the Wilsons' cattle represented the cattle, and that the Wilsons might elect to treat the money as their substitute, and that the identity of the cattle money was not lost. Citing in support thereof *Oliver et al.* v. *Piatt*, 3 How. 333; *Silsby* v. *McCoon*, 3 N. Y. 379.

None of the cases cited by plaintiff in error conflict with the case of *Wilson* v. *Kirby*, 88 Ill. 566.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This case was before us at the January term, 1878, when the judgment of the Appellate Court was reversed and the

cause remanded. A sufficient statement of the facts to obtain a proper understanding of the case will be found in the opinion of the court then delivered. See *Wilson* v. *Kirby*, 88 Ill. 566.

In conformity with the decision, the cause was remanded to the circuit court by the Appellate Court, where a trial before a jury resulted in a finding in favor of the Wilsons, in the sum of $12,143.88 as a preferred claim against the estate of John T. Alexander, deceased. The executor of the estate took an appeal to the Appellate Court, where the judgment was affirmed, and to reverse that judgment he has prosecuted this appeal.

Whether the finding of the jury was justified by the evidence, or in conformity to the testimony, is a question with which we have no concern. Under the statute, that question can not be reviewed here. If, therefore, there was no error in the trial of the cause in the circuit court, we must affirm the judgment.

The defendant, however, contends that the circuit court erred in giving plaintiff's instructions, Nos. 4, 5½, 6, 7, 9, 10, 11, and in refusing instructions Nos. 13, 14 and 15, asked by him.

It is said the fourth instruction assumes that the only question of fact in the case is, what amount of the proceeds of the Wilson cattle came to the hands of the executor of the estate. It is true that the jury were told by the instruction that it was a question of fact to be by them determined, whether any part, and if so, how much, of the proceeds of the Wilson cattle came into the hands of the executor of the estate after Alexander's death, but we do not understand that the instruction declares that to be the only question of fact submitted for their consideration, but if it had so declared no injury would have resulted to either party, because that was the only real disputed question in the case. There was no dispute between the parties in regard to the fact, that at Alexander's death, there was found on his person $20,500,

which was deposited in a bank by his widow, and subsequently, by check, passed over to the executor. This money was claimed by the plaintiff on the ground that it was the proceeds of the sale of what was known as the Wilson cattle. This was claimed by the defendant, and incidentally he claimed that the money could not be traced and identified as the identical money received by Alexander for the cattle.

But, after all, the controverted question before the jury was as stated in the instruction. We do not understand that the instruction withdraws from the jury the question, whether the money can be traced,—nor does it ignore the question at all.

The objection made to instruction No. $5\frac{1}{2}$ is, that it was copied largely from the opinion rendered in this case, while the evidence on the present trial is totally different from what the evidence was on the former trial, and hence the opinion can not control. We do not understand that there is any substantial difference between the evidence introduced on the former trial and the evidence introduced on the last trial, except that the evidence may be somewhat fuller on some points in the case than it was in the first trial. There is, however, no such difference in the evidence as to change the rule of law that should govern the case, and what when the case was here before must control now.

It is contended that, under the sixth instruction, the jury might find for plaintiffs the whole amount they claimed, if they should find, from the evidence, that Alexander sold, in Chicago, on July 25 and 27, a number of the Wilson cattle, and retained the money in his possession until his death, etc. We do not think the jury could have been misled, as supposed, by the instruction. Indeed, the verdict shows clearly they were not, as they gave plaintiff no part of the proceeds of the sale of cattle at Chicago, but confined the verdict to the proceeds of cattle sold at Buffalo.

The other objection made to this, and also to the eighth

and ninth instructions, will more properly arise when we consider the tenth instruction, which was as follows :

"The court also instructs for the Wilsons, that whilst it is incumbent on claimants to show by a preponderance of the proof the identity of the funds alleged to have been received by Kirby, executor, with the proceeds of the Wilson cattle, yet the fact, if proven, that Mrs. Alexander took from her husband during his illness, or after his death, the funds alleged to be the proceeds of such cattle, and deposited the same, and then executed her check to the executor, after his appointment, such deposit by Mrs. Alexander and the giving of a check therefor does not destroy the identity of the fund for the purpose of this case."

It is contended, on behalf of appellant, that the court erred in giving this instruction, and in refusing instructions 13, 14 and 15 asked by him. And this, as we understand the argument, is the main ground relied upon to secure a reversal of the judgment. The argument is, that plaintiffs, to recover in this case, must prove that Alexander sold the Wilson cattle and retained the identical money received from the sale of the cattle, separate and unmixed with other funds, and that such money, unmixed, passed into the hands of the defendant after the death of Alexander; but if the money was mixed with other funds by Alexander before he returned home, or was commingled with other money by his wife after his death, no recovery can be had by the plaintiffs. Alexander had on his person when he died $20,500, the larger portion of which was obtained by him on the sale of the Wilson cattle and as the proceeds of such sale. The balance was money received by him for the sale of other cattle, in which the Wilsons were not interested. All of this money the widow, after Alexander's death, deposited in bank in her own name, and after the executor qualified, she gave him a check for the amount she had thus received and placed in bank.

On these facts, when the case was before us at the former term, it was said: "We make exception, however, of the portion of the proceeds of the sale of the cattle which was in the hands of the decedent at his death, and was paid over to the executor." These proceeds stood in the place of the cattle sold, as their substitute or representative, and were the property of the Wilsons, as the cattle were under the contract, and can be traced and identified as their particular property, and may be followed into the hands of the executor, and they have a preferable claim thereto over general creditors. After stating the rule that the county court may apply equitable rules on the adjustment and allowance of claims against estates, it is then said: "A part of the $20,-000 which Alexander brought back with him on his return from the East, where he had taken and sold one hundred and seventy-seven head of cattle, and which was paid over to his executor, is to be taken to be the proceeds of the sale of these cattle, amounting to some $10,000 and over, as may be inferred from the testimony, and to the extent of such proceeds appellants' claim should have been preferred, and allowed in the 6th class."

In the giving of the 10th instruction, and in refusing defendant's 13th, 14th and 15th instructions, the circuit court adhered to the rule as declared by this court when the case was here before. This rule we are now asked to change, and we have been referred to a number of cases decided in the courts of other States, showing under what circumstances the owner may follow and retake property of which he has been deprived, where it has been changed in form or character by another. But the cases cited we do not regard as having any legitimate bearing here. The money which Alexander received from the sale of the Wilson cattle belonged to the Wilsons; it represented the cattle which they owned, and which were converted into the money. Before Alexander died the Wilsons were entitled to that money, regardless of Alexander's creditors; and so

long as he retained the money in his own hands it was the property of the Wilsons, and did not belong to him, nor could it be successfully reached by his creditors. In what way were the rights of the Wilsons changed by the death of Alexander with this money in his hands? Did the title to the money change, and did it then become the property of general creditors? We think not. Nor do we understand that the fact that the widow of the deceased took the money and placed it in bank, and subsequently turned it over to the executor, affected the rights of the Wilsons. The widow, after Alexander's death, could do nothing, nor could the executor, to deprive the Wilsons of any right they had in and to this money in the hands of Alexander when he died. At his death, so far as this money was concerned, the rights of the Wilsons became fixed. If Alexander in his lifetime had disposed of the money, the case would have been different; but he did not. He retained this money in his hands up to the time of his death, and as the executor took it in his official capacity as executor, and thus appropriated it, the Wilsons are justly and equitably entitled to a preference.

Three cross-errors were assigned by appellees: First, the court erred in giving appellant's instructions 1, 2, 3 and 8; second, the court erred in admitting the testimony of Edward P. Kirby as to the financial condition of Alexander's estate; third, in refusing to allow plaintiffs' claim in the 6th class to the extent of $20,500. The instructions complained of required the jury to find, from the evidence, that the money which came into the hands of the executor was the identical funds which Alexander received from the sale of the cattle, otherwise plaintiffs could not recover. If these instructions conveyed to the jury the idea that no recovery could be had unless the identical bills received by Alexander for the cattle came into the hands of the executor, then they were erroneous. If, on the other hand, the true meaning of the instructions was that the proceeds of the cattle which came into the executor's hands were the proceeds of the sale made by Alexander, they

could not mislead. We are satisfied the jury put this latter construction on the instructions, otherwise they could not have found for the plaintiffs in any amount. This being the case, we do not think the jury were misled by the instructions, although in the form they were drawn a different construction might have been placed upon them.

As to the admission of the evidence of the executor, to the effect that Alexander's estate was insolvent, while we fail to see any legitimate bearing it had on the case, yet it could do plaintiffs no harm, and for this reason, although the testimony was incompetent, its admission forms no ground for a reversal of the judgment.

In regard to the third cross-error, the amount of plaintiffs' claim was a controverted question of fact for the jury, to be determined from all the evidence, and the finding of the jury can not, under the statute, be reviewed here.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*