FIRST NAT. BANK OF CENTRAL CITY v. HUMMEL ET AL.

1. A TRUST FUND ON DEATH OF TRUSTEE REMAINS SUCH, THOUGH INTERMINGLED WITH OTHER MONEYS, AND DOES NOT BECOME GENERAL ASSETS OF THE ESTATE OF TRUSTEE.— Where, in pursuance of a previous understanding among all the parties, the plaintiff drew his draft upon a private banker for the amount of the indebtedness of a third party, who was to and did furnish the drawee with the funds to meet the same, and the draft was mailed by the plaintiff direct to the drawee, with directions to remit the proceeds to a certain bank for plaintiff's credit, but after receipt of the money and before its remittance to the bank named the drawee died, leaving the fund mingled with other moneys of his bank, these circumstances did not make the fund a part of the decedent's estate, and the plaintiff was entitled to recover the same by an action against the decedent's legal representative. Having been received in a fiduciary capacity by the drawee, a trust immediately arose in favor of the plaintiff by operation of law; and the mere fact that the fund became so intermingled with other moneys of the bank that the particular coin or bills of which it was composed could not be identified did not make it a part of the deceased's estate, but it retained its distinctive character as a trust fund, and the estate became chargeable with it as such on death of the trustee.

**2. SAME — THE ADMINISTRATION STATUTES HAVE NO APPLICATION TO
SUCH A CASE.**— The case is not affected by the statutory provis-
ions relating to wills, and the administration of estates, for the
reason that the fund in question never belonged to the deceased,
and therefore constituted no part of his estate. The relation of
debtor and creditor, as between the deceased and the payee of the
draft, never having existed, the statutory provisions relating to the
classification of claims against estates, and the order of their pay-
ment, have no application.

**3. PROPER PARTIES TO SUIT — REMEDY FOR REFUSAL OF ONE TO JOIN.**
The party in whom the legal title to a claim is vested, and the
party who is the beneficial owner of the claim as well, are proper
parties to an action for its recovery; and where the consent of such
a party to the use of his name as a joint plaintiff cannot be ob-
tained, the statute authorizes the plaintiff to make him a defend-
ant.

**4. UNITING DIFFERENT CAUSES OF ACTION — DEMAND OF PLAINTIFF
FOR REIMBURSEMENT.**— A complaint by one in whom is vested the
legal title only to the fund sued for does not improperly unite dif-
ferent causes of action, where, in addition to the prayer for judg-
ment against the principal defendant for this fund, it asks that the
beneficial owner of the fund, who declined to join in the action for
its recovery as a party plaintiff, and for this reason was made a
defendant, reimburse the plaintiff for all costs and expenses of the
suit, that being the only relief prayed against him.

### Error to District Court of Arapahoe County.

Messrs. HUGH BUTLER and A. B. McKINLEY, for plaint-
iff in error.

Mr. A. H. DE FRANCE, for defendant in error.

PATTISON, C. In this case plaintiff in error seeks to
review a judgment sustaining a demurrer to the com-
plaint. It is alleged, in substance, that June 28, 1884,
Risdon borrowed from one Heatly, then a resident of
Golden, the sum of $1,200, for which he gave his note
secured by a trust-deed; that the money was not paid by
Heatly to Risdon at the time, but an arrangement for the
payment thereof was entered into between Heatly and
Risdon and one Everett; that, by the terms of the ar-

rangement, it was provided that Risdon should draw his draft at sight on Everett, at Golden, for said sum of $1,200; that, upon the receipt of the draft, Heatly should provide the money to pay it, and that thereupon Everett should transmit the sum received from Heatly to Risdon, or make such other disposition of it as Risdon should direct; that on July 15, 1884, pursuant to the arrangement, Risdon made his draft upon Everett, "in and by which draft he directed the said F. E. Everett to pay said sum of $1,200 to this plaintiff, and said Risdon then and there delivered said draft to this plaintiff, whereby the plaintiff became entitled to receive of and from the said Everett said sum of $1,200 upon presentation and delivery of said draft;" that on the 16th day of July, 1884, the plaintiff sent the draft by mail to Everett, accompanied by a letter instructing him to remit the said sum of $1,200 to the German National Bank, at Denver, Colo., for the benefit of the plaintiff; that on July 17, 1884, the draft and the letter were received at the banking office of Everett, in Golden, and at or about the same time the said Heatly paid into said banking office the sum of $1,200, being the money called for and mentioned in the draft and letter of plaintiff, and the draft was then stamped and canceled as paid; that the said sum of $1,200 was received by said Everett, or some one in his employ for him, as the money mentioned in the draft and letter, and was paid by Heatly, in pursuance of the arrangement mentioned; and that, under said arrangement, it was the duty and obligation of Everett to at once remit the said sum to the German National Bank of Denver for the credit of the plaintiff.

It is then alleged that, within a short time after the money was received, Everett suddenly died, and the bank was immediately closed, and no further business transacted therein, and that when Everett died, and when said bank was closed, the said sum of $1,200 remained in the bank, and had not been remitted to the German National

Bank at Denver, as directed; that the bank was not opened thereafter.

It is further alleged that on November 12, 1884, the defendant Hummel took possession of the said banking office and its contents, and kept possession of the same; that, among other effects therein, he took possession, and has since had possession, of said sum of $1,200; that thereafter, and on November 20, 1884, plaintiff demanded of Hummel the payment and delivery of said sum of $1,200, but that he refused to pay the same.

It is then alleged, in effect, that, by the terms of the contract between plaintiff and Risdon, the plaintiff was to collect the draft, and, in case it was paid, and the amount thereof deposited in the German National Bank of Denver to the credit of the plaintiff, then plaintiff was to give Risdon credit for the sum of $1,200; that on August 12, 1884, plaintiff informed Risdon that the draft had been paid by Heatly, but that its proceeds had not been remitted to the German National Bank of Denver, as requested; that the money was in the possession of the person in charge of Everett's property; and plaintiff then notified and requested Risdon to take early and proper steps for the recovery of the same; that Risdon refused to take such steps, and notified plaintiff that he should look to plaintiff only for said sum of money; that plaintiff requested Risdon to join as co-plaintiff in the suit; that he refused, and for that reason he was made a party defendant.

Judgment is demanded "that said Hummel deliver and pay over to the plaintiff said sum of $1,200, together with interest thereon at the rate of ten per cent. per annum from said 20th day of November, 1884, and costs."

There is also an additional prayer, in the following language: "And demands judgment against John S. Risdon that he pay plaintiff a reasonable sum of money, sufficient to reimburse plaintiff for all costs and expenses

paid and incurred in the prosecution and maintenance of this suit, and for the recovery of said money; that he be adjudged the owner of said sum of $1,200, less the expense of collection so found as aforesaid; and that plaintiff be released from any and all liability to said John S. Risdon by reason of making presentation and payment of said draft as aforesaid, and of all the other facts hereinbefore set forth."

To this complaint the defendant in error demurred upon the grounds—*First*, that the complaint did not state facts sufficient to constitute a cause of action; *second*, that there is misjoinder of parties defendant, etc.; *third*, that several causes of action have been improperly united, etc.; *fourth*, that the causes of action so improperly united are not separately stated.

The demurrer was sustained. Plaintiff in error "elected to abide by said complaint," and thereupon the judgment was rendered now sought to be reviewed.

The causes of demurrer will be considered in the order in which they have been stated.

First, then, are the facts alleged sufficient to constitute a cause of action against the defendant in error? In other words, upon the facts stated, is plaintiff entitled to the judgment demanded, or to any judgment or relief in the premises whatever?

In the discussion of this question it will be necessary, first, to define the relation of the several parties to the fund in question. That relation must be determined from the facts as alleged in the complaint. The facts, then, are that on June 28, 1884, Heatly agreed to loan to Risdon $1,200. On that day Risdon made his note, and delivered the same to Heatly. The money to be loaned was not paid over by Heatly to Risdon. It was arranged that, on July 15th following, Risdon should be paid by Heatly. To accomplish this, it was agreed between Heatly, Everett and Risdon that, on the day named, Risdon should draw a draft on Everett, which Everett

should pay if Heatly provided the funds for payment. Pursuant to the arrangement, Risdon drew his draft upon Everett, and delivered it to the plaintiff. It is a fair inference from the allegations of the complaint that the draft was payable to the order of the plaintiff. The plaintiff sent the draft to Everett with instructions that, when Heatly paid the money to him, he (Everett) should transmit the money received from Heatly to the German National Bank for the credit of the plaintiff.

Upon this state of facts, the relations between the several parties are clear and well defined. Risdon made the plaintiff in error his agent to obtain the fund in question. The plaintiff made Everett its agent to receive the fund from Heatly. When he received the fund, it was his duty to transmit the identical money received to the German National Bank for the credit of the plaintiff. When the money was paid by Heatly to Everett, therefore, the title to the fund was vested in the plaintiff. The beneficial ownership was vested in Risdon; Everett had no title or interest in the money, or any part of it. His failure, therefore, to transmit the money received from Heatly to the German National Bank was a violation of the duty he owed the plaintiff and Risdon. When he received the money, it became the money of the plaintiff and Risdon. When he died, the fund was their property, and was their property when received by defendant in error.

The question presented upon these facts is whether this sum of $1,200 can be recovered. The action is brought against the defendant in error individually. It will be assumed, however, that the fund was taken by him as the personal representative of the decedent. The case will first be considered without reference to the statute of this state relating to the administration of estates of deceased persons. It was conceded by counsel for defendant in error, upon the oral argument, that, if this specific sum of $1,200 could be identified in any way,

then the action could be maintained.   But it was insisted, if the fund when received was mingled with other funds belonging to decedent so that its identity was lost, then, and in that event, no action could be maintained to recover it.   This proposition was predicated upon the principle that money, as such, cannot be recovered, because, in the language of the books, it has no "ear-mark" by which it can be distinguished.   If this principle can be successfully invoked in this case, then a fund to which decedent had no title, and in which he had no beneficial interest whatever, became a part of the body of his estate to be distributed among the general creditors.   If the estate of Everett is insolvent, such a result would not only be inequitable and unjust, but a reproach to the law.

It is undoubtedly true that the principle contended for was at one time so well settled as to be elementary.   It is clearly stated in Schouler, Ex'rs, § 205.   Attention is only called to two clauses of this section:   "Only those things in which the decedent had a beneficial interest at his death are assets, and not those which he holds in trust, or as the bailee or factor of another.   In order, however, that the third party or new fiduciary may claim his specific thing as separable from assets, its identity should have been preserved; and the rule is that, if the deceased held money or other property in his hands belonging to others, whether in trust or otherwise, and it has no ear-mark, and is not distinguishable from the mass of his own property, it falls within the description of 'assets,' in which case the other party must come in as a general creditor."   In support of the proposition last quoted the author cites two cases: *Trecothic v. Austin,* 4 Mason, 29; *Johnson v. Ames,* 11 Pick. 172.   The first case was decided in 1825; the second in 1831.

It is needless to trace the development of the law which has resulted in a radical change in the principle stated since these decisions were made.   At this time the

owner of money which has been received by another as trustee, or in any fiduciary capacity, can undoubtedly recover the money or its equivalent whenever the same can be followed, no matter what form it may take.

The departure from the rigid doctrine of "ear-mark" or identification of money, to entitle the owner to recover, seems to have been first initiated in England. As the English cases cited have been very generally followed by the courts of this country, attention will be first called to them. The case of *Pennell v. Deffell*, 4 De Gex, M. & G. 372, was a controversy between creditors and the administratrix of one George Green, who in his life-time was one of the official assignees of the court of bankruptcy. It is only necessary to say that, in the course of the administration of his office, the deceased was accustomed to mingle trust funds with his own, and to deposit the same in bank.

In the discussion of the proposition in question, Lord Justice Knight Bruce uses the following hypothesis: "Thus, let me suppose that the several sums for which, as I have said, Mr. Green was accountable at the time of his death, had been (that is to say, that the very coins and the very notes received by him on account of the trusts, respectively, had been) placed by him together in a particular repository, such as a chest, mixed confusedly together as among themselves, but in a state of clear and distinct separation from everything else, and had so remained at his death. It is, I apprehend, certain that after his death the coins and notes thus circumstanced would not have formed part of his general assets,—would not have been permitted so to be used,—but would have been specifically applicable to the purposes of the trusts on account of which he had received them. Suppose the case that I have just suggested to be varied only by the fact that, in the same chest with these coins and notes, Mr. Green had placed money of his own — in every sense his own — of a known amount, had never taken it

out again, but had so mixed and blended it with the rest
of the contents of the chest that the particular coins or
notes of which this money of his own consisted could not
be pointed out — could not be identified.   What differ-
ence would that make?   None, as I apprehend, except, if
it is an exception, that his executors would possibly be
entitled to receive from the contents of the repository an
amount equal to the ascertained amount of the money
in every sense his own so mixed by himself with the
other money.   But not in either case, as I conceive,
would the blending together of the trust moneys, however
confusedly, be of any moment as between the various
*cestuis que trustent* on the one hand, and the executors,
as representing the general creditors, on the other."

In the same case Lord Justice Turner said: "It is, I
apprehend, an undoubted principle of this court that as
between *cestui que trust* and trustee, and all parties
claiming under the trustee, otherwise than by purchase
for valuable consideration, without notice, all property
belonging to a trust, however much it may be changed
or altered in its nature or character, and all the fruit of
such property, whether in its original or in its altered
state, continues to be subjected to or affected by the
trust."

Again, in *Knatchbull v. Hallett*, L. R. 13 Ch. Div. 696,
a most exhaustive discussion of this question is found.
At page 710, Jessel, Master of the Rolls, said: "Now,
that being the established doctrine of equity on this point,
I will take the case of the pure bailee.   If the bailee sells
the goods bailed, the bailor can in equity follow the pro-
ceeds, and can follow the proceeds wherever they can be
distinguished, either being actually kept separate, or
being mixed up with other moneys.   I have only to ad-
vert to one other point, and that is this: Supposing,
instead of being invested in the purchase of land or goods,
the moneys were simply mixed with other moneys of the
trustee, using the term again in its full sense, as includ-

ing every person in a fiduciary relation, does it make any difference, according to the modern doctrine of equity? I say, none."

At page 723, Theisiger, L. J., said: "There is no doubt that there are to be found, here and there in the books, *dicta*, principally of common-law judges, which would appear to militate against the generality of that proposition, and which would appear to show that, in the minds of those judges, there was the view that, while chattels might be followed, or money so long as it could be looked upon as a specific chattel, as moneys numbered and placed in a bag, yet, when those moneys had been mixed with other moneys, that there was no ear-mark, and neither at law nor in equity could they be followed. With reference, however, to those *dicta*, it appears to me there are two observations to be made: In the first place, I cannot find any decision which has followed out those *dicta* to their consequence, assuming that those *dicta* are to be treated as having the generality which at first sight attaches to them; and, in the second place, it appears to me that in many cases those *dicta*, looking to the facts of the particular case, may be restrained to those facts, and possibly may have a more limited meaning than that which has been attached to them by Mr. Justice Fry in the case of *Ex parte Dale*, L. R. 11 Ch. Div. 772, or by the master of the rolls in his judgment in the present case. As far as I can judge, the only exception to the general proposition which I have stated is not a real exception, but an apparent exception; for all cases where it has been held that moneys mixed and confounded, but still existing, in a mass, cannot be followed, may, I think, be resolved into cases where, although there may have been a trust with reference to the disposition of the particular chattel which those moneys subsequently represented, there was no trust, no duty, in reference to the moneys themselves, beyond the ordinary duty of a man to pay his debts. In other words, that they were cases

in which the relationship of debtor and creditor had been constituted, instead of the relation either of trustee and *cestui que trust*, or principal and agent."

At page 713, *Knatchbull v. Hallett, supra*, the master of the rolls says: "Now, let us see, therefore, what *Whitecomb v. Jacob* decides. It decides that the equity as to following the proceeds attaches to the case of a factor as well as to the case of *cestui que trust* and trustee. That is what it decides; but it decides, secondly, that you could not follow money, because it had no ear-mark. The first part is good law at the present day, the second is not. Whether it was a good law or not at the time of Salkeld, it is immaterial to consider. It is very doubtful whether equity had got quite so far at that date as since, and therefore I will not say it was not; but it is not so now."

This case is cited with approval in *National Bank v. Insurance Co.* 104 U. S. 54, in which this and many of the English cases are reviewed. In the syllabus of the case last cited the rule is stated as follows: " As long as trust property can be traced and followed, the property into which it has been converted remains subject to the trust; and, if a man mixes trust funds with his, the whole will be treated as trust property, except so far as he may be able to distinguish what is his. This doctrine applies in every case of a trust relation, and as well to moneys deposited in bank, and to the debt thereby created, as to every other description of property." *Van Alen v. Bank*, 52 N. Y. 1.

Again, in *Bank v. King*, 57 Pa. St. 202, it is held: " Equity will follow a fund through any number of transmutations, and preserve it for the owners, so long as it can be identified, no matter in whose name the legal right stands." Strong, J., says: "But it is insisted there was no ear-mark to the money. What of that, if the money can be followed, or if it can be traced into a substitute? This is often done through the aid of an ear-

mark. But that is only an index enabling a beneficial owner to follow his property. It is no evidence of ownership. An ear-mark is not indispensable to enable a real owner to assert his right to property, or to its product or substitute. Evidence of substantial identity may be attached to the thing itself, or it may be extraneous. It is freely admitted that, if a trustee or agent receive money of a *cestui que trust* or principal, and mingle it with his own so that it cannot be followed, the *cestui que trust* or principal cannot recover it specifically. This is not because the ownership is changed, but because a court cannot lay hold of the property as that of the owner. But, in regard to money, substantial identity is not oneness of pieces of coin, or of bank-bills. If an agent to collect money puts the money collected into a chest where he has money of his own, he does not thereby make it all his own, and convert himself into a mere debtor to his principal. The principal may, by the law, claim out of the chest the sums which belonged to him before the admixture. *Pennell v. Deffell, supra.*"

In *Peak v. Ellicott*, 30 Kan. 156, Horton, C. J., says: "Counsel suggest: 'If there was a trust created, there must have been a *cestui que trust*, and that, if any one is entitled to follow and reclaim the money, it must be the owner and holder of the note of plaintiff.' It does not make any difference that, instead of trustee and *cestui que trust*, the case is one of fiduciary relationship. If a wrong arises out of such relationship, the same remedy exists against the wrong-doer on behalf of the principal as exists against a trustee on behalf of the *cestui que trust*. Wherever a fiduciary relationship exists, and money coming from the trust lies in the hands of the person standing in that relationship, it can be followed by the principal, and separated from any money of the wrong-doer."

In *McLeod v. Evans, Assignee*, 66 Wis. 401, the rule contended for by counsel for defendant in error was, after

a careful discussion by Cole, C. J., practically repudi-
ated.   The proposition decided is thus stated in the syl-
labus: "M. left with H., a banker, for collection, a draft
upon a New York bank.   H. sent the draft to a bank in
Chicago, received credit for the amount, and afterwards
made drafts upon such bank, which were cashed.   Be-
fore payment to M., H. made an assignment for the ben-
efit of creditors.   At that time nothing was due him from
the Chicago bank.   Held, that the proceeds of the draft
were a trust fund in the hands of H., and that, as against
other creditors, M. might enforce full payment from the
assets in the hands of the assignee, although the trust
fund could not be traced to any specific property." *Peo-
ple v. City Bank of Rochester*, 96 N. Y. 32.

No one of the cases cited differs in principle from the
case at bar.   Suppose the money in question had been
placed by Everett in his own pocket, with a mass of other
funds belonging to himself, and that he had then died.
Suppose that immediately upon his death the mass of
currency had been taken into the possession of the de-
fendant in error.   If demand had then been made by the
plaintiff for the money, could defendant in error have
required the plaintiff in error to designate the particular
bills which were claimed as a condition of the right to
recover them?   Certainly not.   How does the case sup-
posed differ from the case at bar?   It is alleged that the
money was paid to Everett, received and retained by him;
that it was in his possession at the time of his death;
that the same sum came to the possession of the defend-
ant in error.   Is it not clear that Everett received the
fund in a fiduciary capacity?   Does it not follow that the
instant it passed into his hands a trust arose, by opera-
tion of law, in favor of plaintiff in error?   Did not the
trust follow the fund when it passed to the hands of de-
fendant in error?   If it was mingled with the assets of
the decedent, is not the estate impressed with the same
trust?   Can it be possible that the fact of death increases

a man's estate by adding thereto all property which may be in his hands? . Can a man, by an abuse of trust or violation of his fiduciary relations, acquire moneys for distribution among his general creditors at his decease? Whatever may have been the law applicable to these questions in the past, it is clear that at the present time the estate of no man can be increased by a wrong committed by him under the circumstances set forth in the complaint in this case.

Is the conclusion reached in any wise affected by sections 126 and 136 of the statute of this state relating to wills and administration of estates ? It will be observed in this connection that the question at issue is one of title. The conclusion already reached is that at the time of the death of Everett the title to the fund in controversy was in the plaintiff in error; that Everett had no beneficial interest therein whatever. The fund, therefore, constituted no part of his estate. Schouler, Ex'rs, § 205.

It is contended by defendant in error, however, that the sections of the statute cited have the effect, in law, to convert the fund in question into assets by their operation in the classification of claims, and the order of their payment. The third subdivision of section 126 provides that, "where any executor, administrator or guardian has received money as such, his executor or administrator shall pay out of his estate the amount thus received and not accounted for, which shall compose the third class." The fourth subdivision provides that "all other debts and demands, of whatsoever kind, without regard to quality or dignity, which shall be exhibited within one year from the granting of letters as aforesaid, shall compose the fourth class." Section 136 relates to the order of payment, and requires that claims be paid according to the classification contained in section 126.

It is claimed, first, that the fund in question does not belong to the third class, because debts of the third class

are limited to moneys which have been received by the decedent as executor, administrator or guardian. This is undoubtedly true. As a natural sequence, it is argued that the demand in issue in this suit is a debt, and belongs to the fourth class. If the plaintiff in error was proceeding against the defendant in error as a general creditor, then, as a matter of course, the position of defendant in error would be correct. Such, however, is not the case. The relation of debtor and creditor, as between plaintiff in error and Everett, never existed. The statute, therefore, has no application. The ultimate fact upon which the right of action in the case at bar is predicated is that the funds in question were never the property of Everett at all; that neither the legal title nor the beneficiary interest vested in him; that the identical fund was in his possession at the time of his death, and that the same fund came to the defendant.

Prior to 1872 the provision of the statute of Illinois classifying claims against the estate of a deceased person was identical in language with that of this state. In the year last mentioned the legislature of Illinois amended that provision so that it reads as follows: "(6) Where the decedent has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for." In the case of *Wilson v. Kirby*, 88 Ill. 566, it was held that "the clause of the statute relating to the classification of claims against estates of deceased persons, and which gives a preference in cases where the deceased has 'received money in trust for any purpose,' does not necessarily extend to and embrace every kind of trust. It does not embrace trusts implied by the law." The same case was before the supreme court of Illinois a second time, and is reported in 98 Ill. 240. It was there held that, "where a person sells the cattle of another as his agent, under a contract, and receives and retains the purchase money until his death, it becomes the money

of the owner of the cattle, as the substitute or representative of the cattle; and the fact that the widow of the person so selling, during his illness or after his death, takes such funds, and deposits the same in bank in her own name, and afterwards gives her check for the same to her husband's executor, will not destroy the identity of the fund, and make it subject to the general creditors of the testator, but the owner of the cattle so sold will have a preference over the other general creditors of the estate. In such case it is not necessary that the identical bills received by the testator should have come into the hands of his executor." Upon examination of this case it will be discovered that the decision is based upon the sole fact that the money in controversy was the money of the owners of the cattle, and that the section of the statute cited is without application, for the reason that, as was said by the court (*Wilson v. Kirby, supra*), the statute does not embrace trusts implied by the law.

In the decision of this case, therefore, the provisions of our statute which have been cited should be disregarded, and the conclusion predicated upon the legal and equitable principles which have been discussed. In the light of these principles, it is clear that the complaint states a cause of action.

The next question presented is whether John S. Risdon was improperly joined as a defendant. It is claimed that, if plaintiff in error was the real party in interest, Risdon could not be properly joined either as plaintiff or defendant. The relation of the parties to each other was as follows: (1) Risdon was one of the original parties to the contract or arrangement upon which the action was predicated, to wit, the payment of $1,200 by Heatly to Everett for him. (2) The plaintiff was the agent of Risdon for the purpose of collecting the money to be paid by Heatly to Everett, and had the legal title to the draft which was drawn, and the right in the first instance to receive the money; but Risdon was the beneficial owner

of the fund.    This being the relation of the parties, the question of parties plaintiff does not seem to be difficult. Section 3 of the code, which was in force when this action was brought, provides that "every action shall be prosecuted in the name of the real party in interest, except as otherwise provided."    Section 5 provides that the trustee of an express trust may bring an action without joining beneficiaries, and that a trustee of an express trust includes a person in whose name a contract is made for the benefit of another.    Section 10 declares that "all persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs."    Section 12 provides that, "of the parties to the action, those who are united in interest shall be joined as plaintiffs or defendants; but, if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint."

The meaning of the language of the first section cited has been frequently construed by the courts.    The "real party in interest" is held to mean the person in whom the legal title to the claim in suit is vested.    *Bassett v. Inman*, 7 Colo. 270, and cases cited.    The suit, therefore, was properly brought in the name of the plaintiff.    But, inasmuch as Risdon was a party to the contract upon which the action was predicated, and was in fact the beneficial owner of the claim, he must be deemed to be interested in the subject of the action, within the meaning of section 10, above cited, and therefore a proper party plaintiff in the suit.

In commenting upon the section last mentioned, Pomeroy, in his work on Remedies and Remedial Rights, at section 199 says: "The extent of the interest is not the criterion, nor its source, nor origin.    If the persons have any interest — whether complete or partial, whether absolute or contingent, whether resulting from a common share in the proceeds of the suit or arising from the stip-

ulations of the agreement — the language applies, without any limitation or exception, and without any distinction suggested between actions which are equitable and those which are legal." All persons standing in the relation to the subject-matter of the action as above defined may be properly joined as plaintiffs. In this particular case, Risdon refused to unite with plaintiff, and was properly joined as defendant.

It is also contended that different causes of action are improperly united. This position cannot be sustained, for the simple reason that no cause of action is stated against Risdon. As a part of the prayer for relief, the court is asked to allow the plaintiff a reasonable sum for its costs and expenses, and to require this amount to be paid to plaintiff by Risdon. No attempt is made to state a cause of action against him. The only allegations are those which are made in compliance with section 12 of the code, as the reason for making Risdon a party defendant. Two causes of action, therefore, are not improperly united; there being but one cause of action stated. The judgment is reversed.

RICHMOND and REED, CC., concur.

MR. JUSTICE ELLIOTT. Having heard and determined this case in the court below, I have given the foregoing opinion careful consideration. At *nisi prius* I must have overlooked some of the averments of the complaint showing that Everett was, by the previous arrangement of the parties, constituted a trustee of the particular fund paid to him by Heatly, for the express purpose of being immediately paid over to Risdon or his order. The judgment should be reversed.

PER CURIAM. For the reasons expressed in the opinion of Mr. Commissioner PATTISON the judgment of the district court is reversed, with leave to defendants below to answer the complaint.

*Reversed.*