Bissell, J.,
delivered the opinion of the court.
The very learned and elaborate opinion delivered by Mr. Commissioner Patterson (14 Colo. 259) when this controversy was before the supreme court, determines this case unless the proofs which were taken on the trial in some way limit the application of the doctrine which the court laid down in that opinion. After a very exhaustive review of all of the authorities, the court held that the funds which were deposited by Heatley in Everett’s Bank for the payment of the draft which had been drawn by Risdon, became trust funds, applicable only to the payment of the bill. The broad principle was asserted that under the circumstances of the payment the funds could not be diverted from the purposes to which they were to be applied, and that they did not lose their character by being commingled with the general deposits of the bank. The present opinion must be read in conjunction with the one delivered at that time, to properly apprehend the limitations under which it is rendered. The facts will not be restated, except in so far as they are varied by the evidence. Generally it may be said that the proof showed that under the arrangement which he. made with Heatley, Risdon, on the 15th of July, drew a draft on him and indorsed it to the present plaintiff, the First National Bank of Central City, which paid him the money, less the regular discount. This bank transmitted the bill to Everett, a banker at Golden, with directions to collect it and remit the proceeds to the German National Bank of Denver. On receipt of the bill Everett’s Bank presented it to Heatley, on whom it was drawn, who paid it in' this wise: he was the holder of two certificates of deposit of $1,000 each, and had to his general credit in the bank a little more than $200; he surrendered the certificates of deposit, which were placed *573 to his credit; he then drew a check on the bank for the amount of the draft which was marked paid, and the amount was charged to his individual account on the ledger. The banker, under his instructions, turned over to Heatley a note and deed of trust on certain property which had been executed by Risdon to secure the payment of the loan. In the forenoon of the day on which this transaction occurred, and shortly thereafter, Everett died and left his institution in a hopelessly insolvent condition.
It was proven that one Charles T. Clark was the county treasurer of Jefferson county, and had deposited the county’s money in Everett’s. Bank. On the 17th of July, when the draft was paid, there was standing to Clark’s credit under the general heading in the bank’s books of “ Clark, Charles T., County Treasurer,” $6,898.84. It also appeared that McGee, the city treasurer of Golden, had a balance on the same date, as treasurer, of $4,909.14. The daily balance book of Everett’s Bank showed the amount of cash on hand, at the close of business, July 16th, to have been $5,583.19, and on July 17th to have been $6,763.29.
Aside from these proofs the case shows that the administrator attempted to defend by setting up that Everett died on the 17th of July, 1884, leaving a last will and testament which was admitted to probate on the 4th of August in the county court of Jefferson county." By the will, James M. Manahan, together with Gregory Board and Clara B. Everett, were named as representatives. On the 21st of July, according to the allegations, Manahan took possession of the bank, of which he had been cashier for five or six years prior to Everett’s death. He remained in possession until the 22d day of August following, when Hummel, the present defendant, was appointed administrator with the will annexed, and proceeded to wind up the estate. The allegations of the defense are probably broad enough to necessitate the inference that Manahan qualified as executor, and as such legal representative went into possession of the estate. It will not be so assumed, however, for the purpose of’ this decision, since *574 it was conceded on the argument that Manahan never qualified as executor, nor gave the bond required of him, although he in a manner went into possession probably by virtue of his nomination. It will be assumed that he was not a qualified executor in legal contemplation. This latter defense was excluded on demurrer.
The facts put in evidence and those stated in the plea are without complexity. The substantial difficulties arise from the attempt to apply to them some very difficult legal propositions. It has been very elaborately argued that the bank was not entitled to recover against Hummel because there were no moneys in the institution at the time that Heatley attempted to pay the draft drawn on him by Risdon, other than the funds which belonged to the treasurer of Jefferson county and the treasurer of Golden City.
The doctrine which was laid down in the First National Bank v. The Insurance Company, 104 U. S. 54, and likewise stated in the opinion of 14th Colorado, before referred to, is by argument used to support the defendant’s contention. These cases clearly hold that when a depositor puts the money of another into a bank, and his title is such as' to impress it with a trust character, of' which the bank has knowledge, the fiduciary, may follow it and recover it from the bank, although it be money and wanting in respect of the earmarks formerly essential to this right. On principle, and according to those very eminent authorities, the rule cannot be so far extended as to enable the cestui que trust to pursue the funds beyond the custody of the bank, or into the hands of innocent parties. The Insurance case simply held that the company had a right to recover from the bank as against its officers, stockholders and directors. The bank had full knowledge of the character of the deposit. It was made by the agent in the interest of the Insurance Company, and had only disappeared because of the bank’s attempt to divert it to the payment of a private debt which the agent owed that corporation. On the theory that trust funds might be pursued even though they lack the distinguishing earmarks, the *575 court adjudged the bank responsible. In the case in 14th Colorado it was decided that the money which was paid in by Heatley for the payment of the draft drawn on him through Everett’s Bank was likewise a trust fund, which could not be diverted for the benefit of the general creditors of the institution. The sole question is whether the proof of the manner of payment prevents the application of the doctrine therein established. No such result seems necessary. It is quite possible that Heatley added nothing to the general •funds of the bank in the shape of money when he surrendered his certificates. He parted with the credit, and he received as security that to which otherwise he would not have been entitled unless the payment was made.
• I do not understand any of the cases to go so far as to hold that where the relations of banker and depositor are proven to exist, none of the consequences ordinarily resulting from that relation can be held to follow. Whenever a public official who has the absolute control of money, deposits •it in a bank without condition, he so far parts with the title that he cannot pursue it in the hands of those to whom it is paid in the regular course of the bank’s business, at least without proof that the payee had knowledge of the trust and that the money he received was a part óf that fund. The same legal result ought to follow in a case like the present. Heatley drew a check to pay the draft which was charged to his individual account. The draft was marked paid, and surrendered, and at the same time, and as a part of the transaction, the banker, in pursuance of his instructions, delivered to him a note and trust deed evidencing the debt and securing its payment. The note and trust deed are outstanding, or they have been paid. In either event, to permit this defense to prevail must subject one or the other of these innocent parties to grave loss. It is not easy to see how Bisdon can be compelled to pay again what he may have already liquidated, or how Heatley can be adjudged to look to his debtor for further security when the original has been destroyed by this judgment, since neither of them have had *576 their day in court and been heard in defense of their rights and equities. There is likewise lacking an element of proof which would in any case be essential to the application of the doctrine. While the evidence showed that there were less moneys in the bank than stood to the credit of Clark as treasurer, and McGee as treasurer, yet there was no evidence as to the date of those deposits, nor was it made to appear to a certainty that the moneys deposited by the respective treasurers had not long been paid out in the regular course of business by the bank, and the moneys on hand were the aggregations of deposits by other persons, between whom and the banker the relation of debtor and creditor existed. The importance and great bearing of these suggestions is manifest when the circumstances of the payment by Heatley are recalled. At that time he was a general depositor of the bank with money to his credit on the books. He held two of the bank’s certificates of deposit for more than the amount called for by the draft, and these he indorsed and surrendered in payment of the bill. It does not transpire that the treasurers’ deposits either antedated Heatley’s, or that they had not been loaned out by the banker and were yet in the hands of the borrowers. Were this the condition of affairs, manifestly as to such loans the officials were remediless, and as to all such funds they sustained no other relation to the bank than that of simple contract creditors. According to the evidence, whatever deposit was made by the two treasurers was a general one, subject to check. It passed into the general funds of the bank, and was paid out to the customers in the usual course of business. Such circumstances must be held as to third persons obtaining the money without knowledge of its character to create no other or different rights than those which spring from the relations sustained by the bank to its customers. The case is then left subject to the ordinary presumptions which may be indulged in when the rights of persons who are without preferential claims are weighed and measured. Heatley had on deposit upwards of two thousand dollars when he attempted to pay the draft with his certifi *577 cates. It is as fair to presume that his $2,300 was a part of the $6,763.29 in the bank when it ceased to do business, as to contend that it was all money which had been deposited by the county and city treasurers. If it was, then, under the ruling in the 14th Colo., it was a trust fund which could not he subject to the statutory scheme of distribution regulating the settlement of .estates, nor to the claims of other creditors. The testimony is not sufficient to permit the application of any other principle to the case than what was laid down in that opinion. Whatever might be our own ideas, we are controlled by the principles therein enunciated. We are not hampered in our announcement by a conviction that they are wrong in theory, or that they are inaccurately applied. We think the law was correctly stated, and is quite as controlling on the case as made by the proofs as it was on that made by the pleadings. Another, and perhaps as strong a reason for refusing to adjust the principle to the present controversy, is found in the fact that the defence was set up by Hummel, who was simply a representative of the decedent, and not by the treasurer of the county in whose favor the trust ran. It is difficult to see what right Hummel has as a representative of the deceased banker to insist that what Heatley did amounted to no payment, because his intestate had theretofore converted monejrs properly represented in those accounts. The right and duty of an administrator to protect the estate which is committed to his care is conceded. But it was solemnly adjudged that what Heatley paid in was a trust fund which might not, by the banker, be diverted to any other uses than those designated at the time of the payment. It then follows that they never became the property of the banker. Lacking this, they likewise formed no part of the estate, as such, which passed into the custody of the representative. His possession was not as the representative of the decedent holding and protecting an estate, but it was as a kind of bailee for the true owner. So far as he is concerned he is without title, and on judgment must tr^-n over. What his responsibility might be in case he should fail to *578 pay, having commingled the money, need not be here passed on. It is enough to show that his contention constitutes no defense. If he occupies this relation to the fund and to the Central City Bank, how can it be any defence to say that when the money came into the hands of the banker it became liable to the assertion of a superior equity by a third person. Hummel is in no sense holding in the right of that other. He is without any title to the money as regards the Central City Bank. Neither does he have or represent the title of the county treasurer. It has never been transferred to him. The general creditors of .the estate and the heirs have no claim to the money. How then does it- concern Hummel that the county treasurer may possibly have some claim to the money ? If it is because he may be twice holden for the money, his remedy was to bring the treasurer into the litigation and have the question settled. Without this he is simply a volunteer, having no such title or claim, derivative or otherwise, as will admit a defence of this sort. Even though the right existed in favor of the county or its treasurer to pursue these funds, this defense cannot be open to the representative without some proof that a claim has been made on him for the money which he has received, and that the funds which he holds are certainly those on which he seeks to impress the trust character, and then only by bringing in the one in whose favor the title is asserted. The relations between Everett the banker and the Central City Bank, were not such as to charge that bank with Everett’s knowledge concerning the character of the deposits in his " hands. Everett’s position as the correspondent of the Central City Bank for the purposes of collection brought him into no such relations to that corporation as would make him either the general agent or an agent other than a special one to do a particular thing. It was formerly held that a principal 'was only chargeable with the knowledge which the agent acquired while engaged in the transaction of the principal’s business. This doctrine has been much modified of late years, and it is now probably true that the principal is *579 chargeable with the information acquired by his agent, whether he obtained it in the course of the transaction of his principal's business or otherwise, providing the knowledge is so acquired by him as to be presumptively within his recollection when he is acting on behalf of the principal. Story on Agency, § 140; Armstrong v. Abbott, 11 Colo. 220 ; The Distilled Spirits, 11 Wall. 356 ; First National Bank of Denver v. Campbell, ante, p. 271.
It would be a novel application of the principle that notice to an agent is notice to the principal, to hold that a banker who receives a draft for collection and to remit, is so far the agent of his correspondent as to charge that correspondent with the knowledge which the banker has of the character of his deposits. To carry this doctrine to its legitimate conclusion would enable the county treasurer of the county of Jefferson to pursue all moneys which may have been paid out by Everett in the liquidation of the various collections which he made for other banks and bankers into whosesoever of their hands the money may have gone. The impracticability of extending the doctrine to any such limit, and the immense disturbance which it would occasion to the monetary affairs of the country must prevent the application of the doctrine. In one sense Everett was the agent of the Central City Bank for the purposes of collection. The money paid to him would undoubtedly be a discharge of the obligation of the debtor. But he was not an agent in such a sense as to bind his correspondent with the knowledge which he may have had as to the character of the moneys on deposit in his bank, and out of which the foreign banker may have been paid. Whether any such exception has ever been in-grafted on the law of agency by an express adjudication is not apparent to the court, but it is evident that the rule must exist as between banks and bankers in a case like the present. A case was cited in support of counsel’s contention in this respect. Bank v. Gas Company, 36 Minn. 75.
If this case holds any different doctrine from the present, this court would decline to follow it. It is impossible to de *580 termine from a careful examination of that decision the ground upon which it rested, or the facts involved in the decision. It is true that the bank in that case had been defrauded of its mone}1' by the misrepresentation and deceit of Kerr, who placed the money with his brbther for ultimate disposal. It is likewise true that the Gas Company in some manner not disclosed by the case induced the brother to part with the money, and that the hank was permitted to recover from the Gas Company that particular fund. On what principle the Gas Company was charged with knowledge of the character-of the fund, and therefore held, is not clear. It is very evident that that court did not intend to go so far as to hold that funds charged with a trust, because of the circumstances under which they were received, could be followed into everybody’s hands, unless there were some special circumstances binding the conscience of the defendant, or out of which a liability in regard to the fund might have arisen in favor of the original cestui que trust. It is conceded, and would be, regardless of that authority, that the fund may be followed into the hands of a third person whenever requisite knowledge can be brought home to the party, or any other circumstances are apparent which would charge him with the responsibility. It must be conceded, however, that something besides the fact that the trust character was impressed upon the funds must be proven to sustain a recovery in such a case.
Another defense on which considerable reliance is placed springs from the fact that the First National Bank of Central City brought suit against Manahan to recover $1,200, which they claimed Everett held for them when he died. The complaint in that case was in all essential particulars like the one in the present suit, with the exception, of course, of the omission of the allegation which charged the appointment as executor to have been made by the court, and a qualification as such under the statute. This, it is assumed, must be true, since any other conclusion would not be supported by the fact. To that complaint a demurrer was interposed and *581 a judgment of dismissal entered. Much learning has been expended in the brief of counsel for the appellant to demonstrate the sufficiency of a plea setting up this fact as one containing the defense of res adjudicaba. It will be conceded that a judgment of dismissal of a bill in equity, unless there be a reservation that the dismissal is to be without prejudice, will be assumed to have been made upon the merits, and as between parties and-privies will be a bar to any further litigation on the same subject-matter. However true this is, the judgment in that case is no bar to the present suit, since there is lacking one element essential to the bar, viz., privT ity. Privity is defined by Greenleaf as a term which “ denotes mutual or successive relationship to the same rights of property.” 1 Greenleaf on Evidence, § 189.
That learned authority well illustrates the different sorts of privies which may exist, and classes them generally like all other law writers and jurists as privies in estate, in blood and in law. He gives the usual illustrations of donor and. donee, lessor and lessee, executor and testator, administrator and intestate. In general these classes embrace all the privies which are known to jurisprudence. It will be observed that the privity only exists because of the relationship between the. parties, or because of the derivative character of their title. It would require a great stretch of the doctrine- and the definition of the authorities on this subject to hold that successive executors and successive administrators and representatives of other sorts were privies in legal contemplation. Yet it was held by a very learned court in Stacy v. Thrasher, etc., 6 How. 44, that the administrator de bonis non did so sustain -that legal relation to his predecessor in the-same trust, as to be bound, probably, by any judgments rendered against that predecessor. It was put in that case however on the principle and reason of an “ official succession or privity.” The rule cannot be extended beyond the doctrine of that case. Nothing but the very high respect accorded to the decisions of that very distinguished tribunal would ever lead me to adopt that conclusion. The administrator *582 de bonis non in no manner derives his title from his predecessor in trust, nor is there between them any sort of relationship save what may be said to spring from the fact that they both represent the same estate and have been appointed by the same judicial authority. It is possible to justify the holding on the ground that since the predecessor was a representative of the intestate whose estate ought to be bound by the adjudication, the successor in representation, coming in as he does in place of the decedent, shall be bound, because the estate which he represents ought to be concluded by the adjudication. To render the judgment conclusive, however, the present defendant, against whom it was rendered, must have held an official relation to the estate which he was found in possession of. The facts in the present suit prevent the adoption of this conclusion. Manahan, while he was named as an executor in the will of Everett, the decedent, never qualified as such, nor did he become in any sense the official representative of the deceased. He may have incurred some legal responsibility for the wrongful taking possession of the assets, but he did not so become the representative as to make a judgment obtained against him, or in his favor, conclusive for or against the estate. Between Manahan and Hummel there was no such official succession as to create the privity absolutely essential to the plea of res adjudicóla.
The present suit was brought by the First National Bank of Central City against the administrator. A denial was interposed to the various allegations of the complaint, and it is insisted that this put in issue the corporate character of the plaintiff because it is a national bank doing business under the federal statutes within the limits of this state. The point was not raised in argument, nor does much reliance seem to be placed on it in the brief. These banks doing business within the limits of the state, and organized there, ■ are not believed to be foreign corporations within the principle which requires proof of their corporate existence under á general denial, and the issue which that plea raises in this State.
*583 No other questions were argued or relied upon in the briefs or at bar, and the preceding discussion has disposed of all questions remaining unsettled by the decision in the 14th Colorado, supra. The record presents no errors which necessitate a reversal of the judgment entered in favor of the bank, and it will accordingly be affirmed.

Affirmed.