Maxwell, J.
Appellee Barton, his brother, Joseph C. Barton, and his niece, Mrs. Fanny C. Hough, were legatees' under the will of an uncle of appellee, who died in Missouri in 1893-.
Items 2 and 4 of the will aré as follows:
“Item 2. I give and bequeath to Fanny C. Hough, daughter of Thomas W. Morgan, and wife of D. M. Hough, the sum of twenty thousand dollars, to be paid over to my nephew, Elias R. Barton, son of K. L. Barton, to be by him held for the sole and separate use of the said Fanny C. Hough for and during her natural life. The money to be loaned by the said trustee at the best interest that can be obtained, and I request that the said trustee attend to this without charge: If loaned at a less rate of interest, then it must be on' real estate at half cash value. I desire, however, that during the life of *321 said Fanny C. Hough, that the said trustee shall pay her one hundred dollars per month, and in ease the said Fanny C. Hough dies, leaving children, then the bequest shall go to said child or children; but in case the said Fanny C. Hough shall die without any child or children living at her death, or any grand children living, then I desire that the amount above bequeathed to her shall be equally divided between the following children of my brother Kimber L. Barton, to wit: Eliza Fritchey, Chas. R. Barton, Joseph C. Barton and William Barton.”
“Item 4. I give and bequeath to Elias R. Barton, Joseph C. Barton and Eliza Fritchey, wife of John A. Fritchey,' children of K. L. Barton, each the sum of eight thousand dollars, provided the portion given to Joseph C. Barton-shall be delivered to Elias R. Barton, to be held by him in trust for said Joseph C. Barton, and used for his benefit as my said trustee shall think for his interest, and I request that said trustee manage the same without charge..”
In July, 1893, the executors of the will turned over to appellee as trustee for his brother and Mrs. Hough, $28,000.00 worth of securities, among which securities was the Wells note; the basis of this litigation. Shortly thereafter appellee made an allotment of the securities held by him as trustee, by writing in pencil upon a list of the securities, the initials “J. C.”, “J. C. B.”, or “F.”, to indicate the person to whom the securities had been allotted, the Wells note being thereby allotted to Mrs. Hough. By a letter dated April 26, 1894, appellee notified Mrs. Hough of the allotment which he had made, attaching to the letter a list of the securities allotted to her, in which list appears the Weils note.
During 1893 appellee procured, through appellant, two loans of H. -Keeney of Missouri, aggregat *322 ing $1,000.00, evidenced by two notes secured by chattel mortgage and other collaterals.
During the time involved in these transactions appellant was a practicing attorney at law in Denver, and as such was employed by appellee in various matters involving his private business, the estate of his deceased uncle and the collection of the Wells note.
At the time the Wells note was delivered to appellee (November, 1894), the Keeney notes were long past due, unpaid, and payment of the same was being urged by appellant, who in this matter was acting in his capacity as attorney for Keeney.
Appellant alleges in his answer, as an affirmative defense, that appellee delivered the Wells note to him in his own behalf and not as trustee for Mrs. Hough; that subsequent to this delivery to him appellee persuaded him to release, and he did release, the collateral security held by him for the payment of the Keeney notes, upon the representation and statement of appellee, that he was the owner of the Wells note, and that appellant held the Wells note as security for the payment of the Keeney notes; that from the time the Wells note came into his possession until after the same had been collected by him, he had no knowledge or information from appellee or from any other source, that the Wells note was not the property of the appellee or that the same was impressed with a trust in favor of Mrs. Hough; that he collected $3,623.70 on the Wells note; that after deducting therefrom the principal and interest due on the Keeney notes, disbursements at the request of appellee, and certain sums for legal services rendered appellee) there was due appellee $338.70, which amount he paid appellee.
A replication put in issue the affirmative allegations of the answer.
*323 This controversy arose out of an attempt of appellant to pay the Keeney notes out of the proceeds of the collection of the Wells note.
An injunction restrained appellant from disbursing the proceeds of the Wells note in payment of the Keeney notes, and the balance of the proceeds of the Wells note, not accounted for by appellant, $1,945.00, is now on deposit in the Denver National Bank, evidenced by a certificate of deposit in the name of appellant as trustee, so designated by an order of the court below.
Trial to the court resulted in a decree ,to the effect that Mrs. Hough is the owner of said sum of $1,945.00, that appellee as trustee is entitled to the possession of the same, and that appellant pay said sum to appellee, which decree was based upon the following findings of fact:
‘ ‘ The Court finds from the evidence in this case that at the time the certain Wells note described in this cause of action was deposited with the defendant Bottom, Elias R. Barton represented to the defendant that said note was his individual • prop-, erty. That subsequently the defendant, Bottom, at the request of Elias R. Barton, released the certain chattel mortgage securities .which he then held to secure the payment, to one Keeney, of his notes, which the defendant at that time represented, and that Elias R. Barton agreed with the defendant, Bottom, that a sufficient sum of money arising, from the proceeds of the collection of the Wells note, when collected, might be applied by the defendant, Bottom, to the payment and discharge of the Keeney notes and indebtedness.
"That at the time the Wells note was left with Bottom for collection, Elias R. Barton did not reveal the fact to Bottom that he, Barton, at the time, was the trustee for one Fanny C. Hough, nor that Fanny *324 C. Hough, was the owner of the whole or any part of the Wells note.
“The Court further finds, that the defendant, Bottom, did release the Keeney securities, upon the faith and representation and promises made by Elias R. Barton to Bottom, with reference to the ownership of the said note, and the agreement that certain proceeds should' be applied to the discharge of the Keeney notes and indebtedness.
‘‘ The Court finds from the evidence, that, at the time the Wells note was left with the defendant Bottom- for collection, that the same was the property of one Fanny C. Hough, and that Elias R. Barton was then the trustee of said Hough. That he held said note in that capacity.
“That a fiduciary relation existed between Barton and Hough, by virtue of a certain bequest theretofore made by Elias R. Barton, of Howard county, Missouri, the deceased uncle of the plaintiff. That the Wells note was delivered to Elias R. Barton as a portion of the assets so bequeathed, and was delivered to Elias R. Barton, among other assets, for the purposes of delivery and distribution by him to the several heirs mentioned in said bequest, being twenty thousand dollars to Fanny C. Hough.
“The Court finds that, at the time the Wells note was delivered to the defendant Bottom, Bottom had neither actual nor constructive notice of the ownership of said note being then in Fanny C. Hough.
“The Court finds from the evidence, that, subsequent to the collection of the Wells note, and subsequent to the release of the Keeney securities, Elias B. Barton did state to the defendant, Bottom, for the first time, that he, Barton, was all the time acting in the premises for Fanny C. Hough, and that all the proceeds of said Wells note was the property of *325 Fanny C. Hough, and that the "Wells note was the property of Fanny C. Hough before the collection thereof.
“The Court further finds, that the $1,945, the balance of the proceeds of said note not accounted for by the defendant to Fanny C. Hough, is now on. deposit in the Denver National Bank, evidenced by' a certificate of deposit, in the name of the defendant Bottom, as trustee, so designated by a court order heretofore made. That there has heretofore been no physical delivery to Keeney of the said sum of money. ’ ’
This is the second appearance of this case in this court. — Bottom v. Barton, 12 Colo. App. 53.
In the course of the opinion, Judge Wilson, speaking for the Court, said, page 56:
“It is true that, if, as is claimed, this note is impressed with a trust, then, under the circumstances, as set forth by plaintiff, the money arising from its collection might be also impressed with a trust, and be recovered by him upon the familiar principle that trust money or the proceeds of trust property may be followed. ’ ’
The rule announced in the foregoing excerpt is the established law of this state. — First National Bank v. Hummel, 14 Colo. 259; McClure v. La Plata County, 19 Colo. 122; Hopkins v. Burr, 24 Colo. 502; Hummel v. First National Bank, 2 Colo. App. 571; Holden v. Piper, 5 Colo. App. 71; Banks & Bros. v. Rice, 8 Colo. App. 217.
It is insisted that the case under consideration does not fall within the rule above laid down for two reasons:
First, there was not sufficient testimony or any^ testimony upon which to base the finding that the Wells note was held by appellee in trust for Mrs. Hough.
*326 Second, that the evidence shows and the finding of the trial court is to the effect that the appellant was a bona fide holder for a valuable consideration of commercial paper not yet due, as security for a debt due Keeney.
The consideration and determination of the above points, involves an examination of the testimony taken at the trial, and as these' points are alone relied upon by counsel in his brief, it is fair to presume, that the abstract of record, prepared and filed by counsel, would in a measure, at least, comply with rule 14 of this court and thereby assist the court in its consideration of the questions presented.
The abstract consists, exclusive of the assignments of error, of about 43 pages, 16 pages .of which are devoted to the evidence, 10 pages whereof is an abstract of certain depositions read in evidence from the bill of exceptions filed at the former trial of tins cause, but not made a part of the record herein, and certified copies of the will, statements, authentications, objections and exceptions saved.
The testimony of the witnesses heard at the trial, which occupies 194 folios of the record, is attempted to be set forth in 6 pages of the abstract; and after a most diligent and critical examination of the abstract, we have utterly failed to discover a single sentence in any degree bearing upon either of the points relied upon for a reversal. In this condition of the abstract, we would be warranted in declining to examine, consider or decide .the points presented, and either dismiss this appeal or affirm the judgment for a failure to comply with rule 14, under the decisions of the appellate courts of this state. — Hunt v. Ohmertz, 15 Colo. 447; Thompson v. Ditch & Reservoir Co., 25 Colo. 243; Sherman v. Logan County, 9 Colo. App. 154; Otto v. Hill, 11 Colo. App. 431.
However, we have decided to waive the enforce *327 ment of the rule in this ease, and at the expense of much time and labor have examined the entire record.
Does the testimony support the finding, that the Wells note was held by appellee in trust for Mrs. Hough?
It is unquestioned that the executors turned over to appellee as trustee, under the express terms of the will, $28,000.00 worth of securities, in satisfaction of the legacies to Mrs. Hough and appellee’s brother; that the Wells note was one of these securities; that appellee held $20,000.00 worth of these securities as trustee for Mrs. Hough.
Appellee testified that, after the executors delivered to him the securities, July 17, 1893, he redelivered them to the executors for collection, taking their receipt therefor, therein specifically describing-each note; that thereafter, the date being uncertain, he noted in pencil on this receipt, opposite each note the initials “J. C.”, “J. C. B.”, and F. ”, which indicated to whom each note had been allotted, the initial “F.” indicating Mrs. Hough; that the Wells note was thus allotted to Mrs. Hough, the above receipt, which was introduced in- evidence, so disclosing ; that September 6, 1893,' he wrote Mrs. Hough that he held for her as trustee $20,000.00 worth of notes; that April 26, 1894, he wrote Mrs. Hough inclosing- a list of the notes, as follows:
“Notes received from Geo. B. Harrison Ex. on July 17, 1893, and assigned to Fanny C.' Hough by Elias R. Barton, trustee, * * * Note of L. O. Wells, $3,671.30 * * * Value on July 17, 1893, when receipted by E. R.. Barton, trustee, and assigned to F. G. Hough.”
There is not a word of testimony in the record contradictory of the above testimony of appellee.
' As between Mrs. Hough and appellee, there can be no question as to the ownership of the Wells note.
*328 Appellant insists, however, that inasmuch as the notes allotted to Mrs. Hough total $20,039. 48, and as it appears that she had been theretofore paid $150.00 by the executors, therefore, appellee and his brother, under the terms of the will, were interested in the notes allotted to Mrs. Hough, to the amount of $189.48, and that no allotment could have been made by appellee without the assent of his brother.
It appears that appellee received from the executors his legacy in full, which disposes of this contention so far as he is concerned. As to whether or not appellee was authorized under the terms of the trust to make the allotment which he did, we do not decide, but appellant is in no position to urge this point to defeat a recovery in this action.
There was no error in the finding that appellee held the Wells note in trust for Mrs. Hough.
Appellant insists that “the evidence clearly shows, and the finding of the trial court is to the effect, that the appellant, defendant in the district court, was the bona fide holder for a valuable consideration of commercial paper, not yet due, as security for a debt due Hosier Keeney from the appellee, who was the possessor of the Wells note.”
Upon this point, we have appellant’s testimony as follows:
. “Q. ‘I want to ask you whether this Wells note, when you took it back in November, 1894, was due?’
“A. ‘It was not’
“Q. ‘On its face1?’
“A. ‘It was not. It was past due though when it was collected. ’ ’ ’
The foregoing was interpolated in the cross-examination of the witness, and little weight seems to have been attached to it at the time, although it is made the basis or foundation for an argument extending through 18 pages of appellant’s brief, as it com *329 prises the entire direct testimony upon this point contained in the record.
Appellant in his answer alleges, “that said promissory note last mentioned, which will be herein designated as the Wells note, was delivered by the said Elias B. Barton, plaintiff herein, to this defendant for the purpose of collection, and with a request on the part of Elias B. Barton, plaintiff, that the defendant should proceed to the state of Missouri and make collection of said note.”
And appellant repeatedly avers in his answer that this note was in his hands for collection. It hardly seems possible that the note was in his hands for collection. It hardly seems possible that the note would have been placed with appellant for collection unless it had been collectible, that is, past due; especially when it appears from the record that appellee had arranged with the executors for collection of these securities at a commission of 2-| per cent.
An authenticated copy of the inventory filed in the probate court of Howard county, Missouri, March 2, 1893, described this note as follows:
“Note on L. C. Wells, dated July 7,1890, due two years after date for $3,400.00, 7f per cent, compound interest. Interest paid in full to July 7,1892. ’ ’
The fact that appellant, in a statement rendered to appellee five days before the commencement of this suit, sought to charge appellee $375.00 “for services rendered in the collection of the Wells note,” etc., would indicate that he did not at that time consider himself “a bona fide holder for a valuable consideration of commercial paper not yet due, ’ ’ and we conclude that the evidence does not show him to have been such.
The contention, that the finding of the court was to the effect that he “was a bona fide holder for a valuable consideration of commercial paper not yet *330 due, as security for the debt due Hosier Keeney-from the appellee who was in possession of 'the Wells note, ’ ’ is answered by a perusal of the findings of the court, hereinbefore set forth in full.
The facts disclosed by the record render inapplicable the many authorities cited by appellant, and for this reason they will not be discussed.
Our conclusion as to the facts is in accordance with that of the court below, and the judgment will be affirmed. ' Affirmed.