HOLDEN, ADM'R, v. PIPER, ASSIGNEE.

1. TRUST FUNDS—EQUITABLE LIEN.

Whenever property held in trust has been misapplied, it may, if it can be traced, be followed and subjected to the use of the *cestui que trust;* but to entitle a trust creditor to a preference, it must be satisfactorily established that the property of the insolvent remaining for distribution includes the proceeds of the trust estate.

2. SAME.

When all the case shows is that a banker, as administrator, received trust funds and misapplied them, and ultimately becoming insolvent, transferred his estate to an assignee for the benefit of creditors without disclosing what of the trust funds, if any, passed to the assignee, or what property passed by the assignment into which the trust fund had gone, the court is powerless to declare any preference in favor of the administrator *de bonis non.*

3. ADMINISTRATOR DE BONIS NON.

An administrator *de bonis non* has full authority to resort to such remedies as may be essential to preserve or recover the estate of the decedent, whether from strangers or from former representatives.

*Error to the District Court of Pueblo County.*

Messrs. BETTS & VATES and Mr. B. F. McDANIEL, for plaintiff in error.

Mr. D. McCASKILL, for defendant in error.

BISSELL, P. J., delivered the opinion of the court.

For some years Frederick Rohrer was doing business in the city of Pueblo as a banker, under the name of The Bank of Pueblo. In 1890, he was appointed administrator of the estate of John T. Sullivan, and as such representative collected about forty-six hundred dollars. Of this sum, he disbursed in the course of his administration a little upwards of twelve hundred dollars, leaving $3,364.58 unaccounted for. On the last day of May, 1892, he made a statutory general assignment for the benefit of his creditors, and at the date of

the present litigation, the defendant in error, Piper, was the assignee of the estate. Rohrer turned over $551.80 to the assignee. There was probably other property belonging to the assignor which passed by the transfer, but to what extent and of what it consisted the record is silent. In the September following, Holden, the present plaintiff in error, filed a petition in the matter and prayed a decree that the assignee be directed to pay him the unpaid balance of $3,364.58, and that Sullivan's estate be given a preference over all the other of Rohrer's creditors. When the petition was filed the assignee took issue and the case was heard upon an agreed statement of facts. This proof established the facts above stated, and further, that during a period of about two years subsequent to the date of his appointment, Rohrer had from time to time received the moneys which went to make up the total sum belonging to the Sullivan estate. The petition is silent as to the exact dates of the payments, and simply recites that within a period named all the money had been received. This period antedates the assignment by some two or more weeks. Rohrer used the money which he received in his general business, mingled it indiscriminately with his other funds, and treated it as personal assets in the transaction of his business and in the payment of his debts. Aside from this general statement, there is no showing as to the time when the last money was collected, nor whether any of it went into other property which passed to the assignee.

On this state of facts the petitioners claimed that the fund which Rohrer had appropriated was a trust fund, and whatever property he transferred to the assignee was impressed with a lien in favor of the estate, which the present administrator had a right to assert against Rohrer's general creditors. Measurably accepting this claim as well founded, the court decreed that the cash on hand at the time of the assignment should be paid to the administrator, and dismissed the petition as to the residue. The judgment entered cannot stand. The assignee assigns cross error as to the judgment for $551.80,

and his error is well laid. The administrator is entitled to no decree giving him a preference over Rohrer's general creditors. There has been considerable conflict of opinion amongst the courts as to the limitations which restrict the doctrine that trust funds may be followed into the hands of third parties, and either the funds themselves, or the property into which they have gone, be subjected to a liability resulting from their original trust character. The supreme court, in *First National Bank v. Hummel et al.*, 14 Colo. 259, accepted the rule of the more modern cases, that funds might be pursued and impressed with their trust character, even though the trust property itself consisted of money which was without the earmarks formerly held essential to the application of the doctrine. This case undoubtedly went to the uttermost limit in the assertion of the rule that so long as trust property could be traced and followed, it should remain subject to the trust, and wherever trust funds were mingled with another's assets, the whole would be treated as trust property, except in so far as the defaulting trustee might be able to distinguish his own property from the trust estate. This case, however, as stated in that opinion, and as reconsidered on a subsequent appeal, in the 2 Colo. App. 571, must be viewed in the light of the facts which constituted that particular controversy. The contest there was between the administrator of Everett and the First National Bank. The bank at the time of the assignment had on deposit some six thousand dollars. The fund in controversy was adjudged to be a part of this deposit. In other words, it was there holden that the evidence established that Heatley's money, to the extent of the amount of the draft, was directly traceable to the general fund which passed to the administrator as part of the assets of Everett's estate at the date of his death. The transaction which was regarded as a payment of money into the bank by Heatley occurred on the 17th of April, which was the day of Everett's death, and consequently the day legally of Hummell's succession to his interest. For these reasons, it must not be assumed that either of those cases has

decided that there is no necessity to trace the trust funds into the property which passes to the assignee or to the representative, but the rule is to be taken as subject to that limitation. That this is true is very completely demonstrated by the very able and perspicacious opinion of Mr. Justice Goddard in a recent case in the supreme court. *McClure et al. v. The Board of County Commissioners of La Plata County*, 19 Colo. 122.

The court there recognizes the rule that wherever property held in trust has been misapplied, it may be followed, but upon condition that the property can be traced, in which event, whether in the old or the new form, it may be subjected to the use of the *cestui que trust*. The court apparently had some difficulty in escaping the force of the case of *McLeod v. Evans*, 66 Wis. 401, and for the purposes of announcing the rule to be followed quotes from the dissenting opinion of Judge Cassoday, who said: "An equitable lien exists only when the trust money is directly or indirectly traceable to the fund sought to be charged." This circumstance very clearly discloses the trend of the opinion. The doctrine stated is in very complete harmony with the best considered cases, and very accurately enunciates the law. The case in Wisconsin has since been overruled in the *Nonotuck Silk Company Case*, hereafter cited. In the latter case it was clearly settled that to entitle a trust creditor to a preference, it must be satisfactorily established that the property of the insolvent remaining for distribution includes the proceeds of the trust estate. *Nonotuck Silk Co. v. Flanders*, 58 N. W. Rep. 383; *Matter of Cavin v. Gleason*, 105 N. Y. 257; *Northern Dakota Elevator Co. v. Clark*, 53 N. W. Rep. 175; *Little et al. v. Chadwick et al.*, 151 Mass. 109; *Union National Bank v. Goetz et al.*, 138 Ill. 127; *Ellison v. Moses*, 95 Ala. 221; *Sherwood v. Milford Bank*, 94 Mich. 78.

A consideration of the facts stated at the outset of this opinion very readily satisfies us that the case as laid does not come within the limits essential to the application of the doctrine. All the case shows is that Rohrer, as administrator, received funds and misappropriated them, ultimately became

insolvent, and transferred his estate to an assignee. What of the trust funds, if any, passed to the assignee, whether in the shape of the original moneys received by Rohrer, or of other funds into which it had been transmuted, or what property passed by the assignment into which trust funds had gone, the record does not disclose. Under these circumstances, it is manifest the court was powerless to decree any preference to the administrator.

It was seriously contended in the argument that because the plaintiff in error was an administrator *de bonis non*, he could in no event maintain his petition, since his only rights and remedies concerned the unadministered portion of the estate. This was doubtless the ancient rule, and it still prevails in some states, though the more modern doctrine has enlarged the powers of such an administrator with reference to the decedent's property. It is useless to investigate this question in Colorado, since our statutes (Gen. Stats., sec. 3548; Mill's An. Stats., sec. 4720) entirely dispose of this question. By these statutes there is preserved to such an administrator full authority to resort to such remedies as may be essential to preserve or recover the estate of his decedent, whether from strangers or from former representatives.

The court erred in decreeing the administrator entitled to a preference as to $551.80, and the judgment is accordingly reversed and remanded.

*Reversed.*