## JANUARY TERM, 1896.

### MELDRUM ET AL. v. HENDERSON.

1. TRUST FUNDS.
If a check be given to a banker for collection only, and the money realized by him from its collection went with his other property into the possession of his assignee for the benefit of creditors, the right to reclaim it is not affected by any unauthorized act of the assignor in intermingling it with his own funds.

2. SAME.
To warrant a recovery against the assignee of an insolvent banker of money realized by the assignor upon a draft delivered to him by the plaintiff, on the ground that it was a trust fund, it must clearly appear that the draft was delivered to the banker to be collected for the plaintiff, thus constituting him an agent for the purpose; that the money was collected by him, and passed into the hands of his assignee.

3. ASSIGNMENT.
A draft does not operate as an assignment of money in the hands of the drawees until its presentation to them, and not then unless they accept it.

4. TRUST FUNDS.
If one having trust funds deposits the same in a bank as his own money, has it placed to his individual credit, and mingles it with his other funds in such a manner that its identity is lost, its trust character is by his own act destroyed, and he cannot, after the banker's assignment for the benefit of creditors, follow it into the hands of the assignee and recover it as a trust fund.

*Appeal from the District Court of Logan County.*

Mr. G. Q. RICHMOND and Mr. C. L. ALLEN, for appellants.

Mr. S. A. BURKE, for appellee.

THOMSON, J., delivered the opinion of the court.

This suit was brought by the appellants to recover from the appellee, as assignee of M. H. Smith, a banker at Ster-

ling, Colorado, the unpaid balance of a draft alleged to have been deposited with Smith for collection, and collected by him before making the assignment. A trial of the issues made by the pleadings resulted in a judgment for the defendant, from which the plaintiffs appealed.

On, and for a considerable time before, the 17th day of June, 1893, the plaintiff Tedmon was register, and the plaintiff Meldrum, receiver, of The United States land office at Sterling. On that day The Union Pacific Railway Company delivered to the plaintiffs its check for $2,614, payable to their order, upon the Omaha National Bank of Omaha, Nebraska, for funds due them, as officers, upon a list of lands selected by the Railway Company under a grant from the government of the United States. The check was payable to them in their official capacity, and was kept in their office until the first day of July following. On the latter day the check was, as the plaintiffs allege, delivered to Smith for collection by Meldrum, who indorsed it " H. E. Tedmon, Register, by N. H. Meldrum.   N. H. Meldrum, Receiver." Instead, however, of forwarding it for collection as the agent of the plaintiffs, Smith credited the money it represented to the personal account of Meldrum on the books of the bank, and sent the draft to The Denver National Bank, at Denver, Colorado, receiving a notice two days later from the latter bank that it had placed the amount of the draft to the credit of Smith's bank.   On the 19th day of July, Smith made an assignment of all his property for the benefit of his creditors to John M. Henderson.   The latter immediately resigned, and upon the next day the defendant was duly appointed as his substitute.   About eight o'clock on the morning of the 19th, and about thirty minutes, as Smith says, before he executed the deed of assignment, Meldrum, who was present in the bank at Smith's request, drew his check upon Smith's bank, —known as " The Bank of Sterling,"—for the entire amount of his balance in the bank, and received from Smith $1,000 in cash, and a draft on Kountze Bros., bankers, New York

City, for $1,943.71. The payment of this draft was stopped by the defendant as assignee, and it was returned unpaid.

The principal question discussed by counsel relates to the right of the owner of a trust fund to follow it into an insolvent estate, and enforce full payment from the assets. We have no disagreement with counsel upon their general statements of the law. If the check was given to Smith by the plaintiffs for collection only, if he collected it, and if the money realized from it went with his other property into the possession of his assignee, the right of the plaintiffs to reclaim it is unquestionable; and the right would not be in the least affected by any unauthorized act of Smith in destroying its identity by intermingling it with his own funds. *First Nat. Bank v. Hummel*, 14 Colo. 259.

The difficulty, however, in this case does not arise out of any law which may be applicable, but out of the facts. To warrant us in reversing this judgment, it must clearly appear that the draft was delivered to Smith to be by him collected for the plaintiffs, thus constituting him their agent for that purpose; and that the money was collected by him, and passed into the hands of his assignee. These two conditions must concur before the estate is chargeable with the fund. *McClure v. Commissioners*, 19 Colo. 122; *Holden v. Piper*, 5 Colo. App. 71.

An examination of the evidence upon the subject of the deposit of the check will be first in order. Meldrum and Smith both testified that it was deposited with Smith for collection. Each related a conversation had between them about the time of the deposit, in which Meldrum said to Smith that the check was sent to pay the expenses of the balance of the selection of The Union Pacific Railway Company in the district, that it was quite a large sum of money, and that he would not call on Smith for the cash until the check was collected. No other conversation upon the subject was given. We have no reason to doubt that it occurred as stated, or that both parties, properly or improperly, interpreted it as meaning that the draft should be received by

Smith to be collected by him for Meldrum. But there was in evidence a deposit slip, of which the following is a copy:

" Deposited in The Bank of Sterling, by N. H. Meldrum.
　　　　　　　　" Sterling, Colo., July 1st, 1893.
　　　　　" Please list each check separately.

| | Dollars. | Cents. |
|---|---|---|
| Currency, . . . . . . | $ 45 | 00 |
| Gold, . . . . . . . | | |
| Silver, . . . . . . . | | |
| Checks, . . . . . . . | 2,614 | 00 |
| | 50 | 95 |
| | 16 | 00 |
| | 16 | 00 |
| | 16 | 00 |
| | 16 | 00 |
| | 15 | 00 |
| | 20 | 00 |
| | 8 | 20 |
| | 8 | 25 |
| | 8 | 50 |
| | 7 | 00 |
| | 7 | 00 |
| | 5 | 00 |
| | $2,852 | 90 " |

This is the form of slip filled out by a customer of a bank upon making a general deposit, and from which it makes the entries in its books. It was shown, and is not disputed, that the slip in evidence was filled up in the handwriting of Mr. Meldrum. The slip shows that on July 1st Meldrum deposited, for the purpose of being credited to his personal account, a sum aggregating $2,852.90, one of the items of which was the check in question. It is not claimed that it was intended that any other check, or any other item embraced in the sum total, should be deposited specially; or that it was not proper to credit any of them, except the

Union Pacific check, to Meldrum's general account; and no distinction was made in the slip between one and another. The identity of each was lost in the general aggregate. The slip amounted to a written direction to the bank to credit Meldrum's account with the sum of $2,852.90, and, accordingly, this was what the bank did. The amount was immediately thrown among the other funds of the bank, and was thereafter undistinguishable from them, not by the unauthorized act of the bank, but in consequence of the act of Meldrum himself. Meldrum and Smith may both have intended that this particular check should be taken upon some condition, or subject to some limitation, not applicable to the other sums embraced in the slip; but their intention was not carried into effect, and it is with their acts, and not their naked intentions, that we are at present concerned.

Pursuing our investigation a little further, we find strong reasons for concluding that whatever might have been the intentions of Meldrum and Smith in relation to the check prior to its deposit, at the time Meldrum made the deposit slip, and actually delivered the check to the bank, it was understood that it should go into his personal account. The books of the bank, showing the dealings between it and Meldrum for sometime before and after the 1st of July, were introduced by the defendant. They show a running account of deposits and checks during the entire time. On the evening of June 30th Meldrum's balance was $625.93. On July 1st he made the deposit of which we have spoken. It was the only deposit made by him that day. Adding together his balance and the amount of that deposit, we find that he had then in the bank to his credit $3,478.88. On that day he drew out of the bank upon his check $1,066.67, leaving to his credit only $2,412.21, which was $201.79 less than the amount of the Union Pacific check. The natural, if not unavoidable, conclusion is that in making a check the payment of which would necessarily impair the fund in question, he regarded it as being on deposit subject to withdrawal by check, and therefore belonging to his general account;

and Smith in paying his check must also have so regarded it. He continued checking against his balance without further deposit until July 11th, but this fund was not made good until July 15th. On July 19th he made a check payable to himself for his entire balance then in bank, amounting to $2,943.71, and received, as has been stated, $1,000 in cash, and a draft on Kountze Bros. for $1,943.71. The entire history of the money represented by the Union Pacific check, as written by Mr. Meldrum and Mr. Smith, is the history of money placed by Mr. Meldrum to his individual credit in Smith's bank, and withdrawn by him from time to time at his pleasure; and the claim that there was anything more sacred about it than about his other moneys with which he intermingled and confounded it, is unsubstantial.

As to whether the money realized from the check ever went into the hands of the assignee the evidence is unsatisfactory and inconclusive. But it is unnecessary to give it particular notice, because we are unable to say that the decision of the trial court upon the character of the deposit made by Meldrum was not right.

But there is another theory upon which the plaintiffs claim a right to prevail in this suit; and it is that the bill of exchange drawn by Smith upon Kountze Bros., payable to Meldrum, was an equitable assignment to him of money of the drawer in the hands of the drawees. The making of a draft does not *ipso facto* operate as an assignment. Before this draft was presented, the assignee notified the drawees of the general assignment made by Smith, and directed them not to pay the draft. The draft could not operate as an assignment of the money in Kountze Bros.' hands until its presentation to them, and not then unless they accepted it. Without acceptance, Meldrum could have maintained no action against them for the money, and the reason why he could not do so is because the mere act of making the draft did not transfer title in the money to him; and until it should operate to invest him with owernership of the money, it was no assignment. The failure to realize the money upon

the draft left him a creditor of Smith on account of the unpaid balance due him, and as a creditor his position was no better and no worse than that of any other general creditor.    See *Grammel v. Cramer*, 55 Mich. 201; *Ray v. Hiller*, 11 Colo. 445.

But there is a peculiarity about this draft which we cannot avoid noticing.    The following is a copy of the paper:

"$1,943.          BANK OF STERLING.          No. 7821.
        "M. H. SMITH.

  "(Drawees are advised that M. H. Smith has assigned.)

                "STERLING, COLO., Jul. 18, 1893.
  "Pay to the order of N. H. Meldrum, $1,943.71 (nineteen hundred forty-three and $\frac{71}{100}$) dollars.

                        "M. H. SMITH,
                                "(KING) Cashier.
  "To Kountze Bros., New York."

It appears from the face of this document that the assignment had been made before the bill was drawn.    If so, Smith had no right to draw it.    But, however this may be, it advised the drawees that the fund was no longer the property of Smith, and that the draft was therefore worthless. With that notification staring them in the face, they would not have been justified in honoring the draft; and with that introduction, the bill did not purport to be drawn against any fund, and therefore could not operate as an assignment of anything.

Whatever indebtedness there is, is owing to Meldrum alone, and not to Tedmon and Meldrum; and Tedmon is not a proper party to any proceeding for its allowance or recovery.

The judgment must be affirmed.

                                *Affirmed.*

## ON APPLICATION FOR REHEARING.

PER CURIAM.   This application for a rehearing is based upon three grounds : *First*, that the Union Pacific check represented money belonging to the United States ; that it was intrusted to Meldrum and Tedmon as United States officers, and that therefore Meldrum was without authority to deposit the fund to his own credit ; *second*, that the words, " Drawees are advised that M. H. Smith has assigned," were placed upon the draft by Kountze Bros., when it was presented for payment, in consequence of a telegram from the assignee, previously received, notifying them of the assignment; and, *third*, that as the original check was payable to Tedmon and Meldrum as register and receiver, and as both register and receiver were alike responsible to the government for the money, they were equally interested in the suit, and it was therefore error to hold that Tedmon was not a proper party.

I. The plaintiffs are hardly in a position to say that the fund they seek to recover belonged to the United States. Whatever may have been the fact in that regard, Meldrum deposited the fund as his own money.   By his own direction it was placed to his individual credit, and went to swell the apparent assets of the bank.   He mingled it with his other funds in such manner that its identity was lost, and drew against the consolidated account from time to time for his own purposes.   If the fund was ever impressed with a trust, its trust character was destroyed by the act of Meldrum in so mingling it with his own money that as a distinct fund it could no longer be traced.   Tedmon, by his silence at least, acquiesced in what Meldrum did.   He is a party to this proceeding, and, with full knowledge of all the facts, makes no claim that Meldrum acted for him without his authority. Besides, the United States is not a party to this proceeding. It is not complaining, and its rights cannot be adjudicated in this action.   Meldrum treated the money as his own ; Tedmon does not gainsay his acts ; and as against the cred-

itors of the bank the claim of the plaintiffs that the money was not theirs cannot be considered.

II. It may be true that the objectionable words which appear on the face of the draft were placed there after its execution as counsel state. We are referred to no evidence upon the subject, and we are unable to find any. The following is from the record:

" Thereupon plaintiffs offered in evidence draft in question, marked ' Exhibit A,' which is in the words and figures following, to wit:

" ' $1,943.       BANK OF STERLING.       No. 7821.

" ' M. H. SMITH.

" ' (Drawees are advised that M. H. Smith has assigned.)

" 'STERLING, COLO., Jul. 18, 1893.

" ' Pay to the order of N. H. Meldrum, $1,943.71 (nineteen hundred forty-three and $\frac{71}{100}$) dollars.

" ' M. H. SMITH,

" ' (KING) Cashier.

" ' To Kountze Bros., New York.' "

The foregoing is an exact representation of the draft, as it appears in the printed abstract. In the transcript the words of advice are upon a printed slip, pasted to the draft. But it would seem from the quotation that the paper, with all it contained, was given in evidence as the draft which Meldrum received from Smith. Still it may be that counsel's statement is correct; but conceding that it is, our decision would be the same. The draft was not an assignment of money in the hands of Kountze Bros., unless they accepted it. This they never did.

III. Whatever obligation Meldrum may have been under to account to Tedmon for the money, or any part of it, as between Meldrum and the bank, in virtue of the deposit and credit to Meldrum's individual account, the money belonged to Meldrum. Tedmon was not known to the bank in the transaction. The draft upon which this suit was brought

was the balance due Meldrum, not upon the Union Pacific check, but upon his entire account, in a considerable portion of which Tedmon had and claimed no interest. Even if Tedmon had an interest in the original check of the Railroad Company, he suffered Meldrum to use it as his own, and this draft, which embraced all of Meldrum's money then in bank, does not represent it. Mr. Tedmon's remedy, if he has any, is against Meldrum.

The petition for rehearing will be denied.

*Rehearing denied.*