[No. 6413.]

Cotting, Trustee, v. Berry et al.

1. **Trusts and Trustees—Following Trust Funds**—A trustee enters into an arrangement with a corporation operating a mine under a lease with an option of purchase, and agrees to make certain advances, but reserves the right to withdraw at any time from the enterprise. After a very large investment of the trust funds he withdraws accordingly, and the investment is forfeited. Held, that though the trustee afterwards procured title to the mine from the owners, under a new contract, the investment made by the trustee of trust funds, under the first arrangement, was not to be charged upon the properties as against the assignee in bankruptcy of the trustee, even although the trustee, was, by the terms of the first arrangement, entitled to an option to purchase the mine in his own name, to be procured for him by the mining company, and might have acquired title to the mine under such option. That the case was not one for the application of the equitable doctrine that things which ought to have been done are regarded as done.—(218-223)

The effect of the prior decisions of this court is, that if the estate, sought to be charged with a lien for trust moneys unlawfully diverted from the trust, was augmented by, or received the benefit of the trust moneys, or of the property purchased therewith, such estate may be impressed with a preferential lien; but where the moneys improperly diverted from the trust are traced into a specific property which is worthless, the successor, representing the trust, will not be permitted to waive his claim upon the worthless investment, and assert a preferential lien upon the general assets pertaining to the estate of the defaulting trustee.—(226; 227)

2. **Sale of Chattels—Non-Delivery—Effect in Equity**—A trustee sold certain mortgages pertaining to the estate, and received from the purchaser the full value thereof. He had power, by the terms of the trust, to make the sale, and the purchaser was not required to see to the application of the purchase money. Held, that even though the mortgages remained in possession of

such trustee, and were subsequently sold by him to other parties, as between the original purchaser and the assignee in bankruptcy of such trustee, and the successor in the trust (the latter suing to establish a preferential lien upon the bankrupt's estate, for the value of the mortgages), the sale was to be regarded in equity as a completed transaction.—(224, 225)

3. **Cases Distinguished or Explained**—First National Bank v. Hummel, 14 Colo. 259; Hummel v. First National Bank, 2 Col. App. 571; Holden v. Piper, 5 Col. App. 71; McClure v. La Plata County, 19 Colo. 122; Hopkins v. Burr, 24 Colo. 502, explained. —(226)

*Appeal from Gilpin District Court*—Hon. FLOR ASHBAUGH, Judge.

Mr. THOMAS M. MORROW for appellant.

Mr. CLARENCE A. BRANDENBURG for appellees.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court:

This is an equitable action to trace trust funds, which belong to an estate of which plaintiff is trustee, and which were misappropriated by a former trustee, and to impress a lien therefor upon the assets of an insolvent bankrupt estate which, it is claimed, was thereby augmented. The judgment was against plaintiff, and he has appealed. A brief recital of the story of financial operations disclosed by the record, unusual and interesting, will tend to elucidate the material issues involved. Charles F. Berry, of the city of Boston, was a trustee of a number of estates, including that of Charles E. Haley, aggregating in value several millions of dollars. By one clause of Haley's will there was bequeathed to his executors, as trustees, of whom Berry was sole successor, the sum of one hundred thousand dollars, to be invested, and the income to be paid to his daughter. One of the provisions of the same will gave to the trustee full power to sell real and personal estate, at public or private sale, for cash or

credit, and for such consideration as he saw fit, free of the trust, and the purchasers were in no event to see to the application of the purchase money. In his investment of estate funds, Berry made some bad loans, and, to recoup the resulting losses to the estate, began a series of speculative investments with the trust funds, in which he sank a large amount of money. One of these investments was a mining scheme, into which he was induced to enter by the promoters of the Kokomo Pioneer Mining and Milling Company, a Colorado corporation. These promoters and their company were in possession of, and working, the Kokomo Mine, in Gilpin County, Colorado, under a bond and lease from the owners, and the contract, which Berry made with the lessees, provided, among other things, that he should advance, from time to time, for its development, money in such amount as the proceeds of the sale of ore and other receipts fell short of meeting the expenses of operation, and certain other obligations that the lessees were under to the owners. This agreement also provided that a new bond and lease on the Kokomo Mine should be obtained from the owners, running directly to Berry, to be held by him as collateral security for the advances. There was another clause which entitled Berry to withdraw from the agreement, and, if he did, he was not to be held liable, in any way, to the company and its promoters. After Berry had advanced about one hundred thousand dollars under this contract, becoming dissatisfied because of misrepresentations of the promoters, and the development and working of the mine having proved disastrous, he abandoned the contract. Not long after Berry's withdrawal, the lessees failed to comply with their agreement with the owners of the mine, and the latter forfeited the contract under their bond and lease, which they

might do, and retook possession of the property.
Afterwards Berry, under an entirely different contract, secured an option upon the Kokomo Mine
from the owners, and complied with its terms, and
obtained a deed of the property. After the conveyance, the Haley beneficiaries, having discovered that
Berry had misappropriated their money, obtained
his resignation as trustee, and Charles E. Cotting,
the plaintiff in this action, was appointed as his
successor, trustee of the estate. Berry was adjudged
a bankrupt in the state of Massachusetts, and the
defendant, James D. Colt, was appointed trustee of
his estate under the United States bankruptcy laws.
Cotting, as the Haley trustee, brought this action in
the District Court of Colorado against Colt, Berry's
trustee, and other persons interested, claiming that
the trust funds of the Haley estate, to the amount
of about $32,000.00, were used by Berry in the development of the Kokomo Mine, and its subsequent
purchase, and in buying certain securities; and he
seeks to enforce a preferential lien upon that mine,
which constitutes a part of Berry's bankrupt estate
in the hands of Colt, trustee, and the only thing of
value. Such other facts as are pertinent will be
narrated in the appropriate place in the opinion.
The unusual thing about this remarkable story, to
which reference has been made, is not that great
losses were suffered by the beneficiaries and the
trustee was ruined, but that this trustee did not
profit a cent by the wrongful transactions, and his
sole object, as is conceded, was to protect and save
harmless those for whose use and benefit he held
trust funds.

The first item for which a lien is asked is the
sum of five thousand dollars, which plaintiff says
was paid by Berry as a part of the purchase price
of the Kokomo Mine, under the option held by the

promoters of the mining company. A second item, amounting to $6,091.61, came, it is said, from the Haley funds, and was used in the development of the property under the terms of the contract heretofore mentioned. In his brief, counsel for plaintiff says that it is conceded that these two different amounts were so invested out of Haley moneys that came into Berry's hands from a Reverend Foote, in a manner hereinafter particularly described. This statement is not borne out by the record. The defendant strenuously denies it, and the trial court, in its findings, agrees with the defendant. It is true that Berry advanced, during the life of his first contract, these two sums of money. But the evidence does not show—at least, the trial court does not so find—that any of this money belonged to the Haley estate, or that the first item was paid as a part of the purchase price of the Kokomo Mine, or that any of the money included in the second item was used in its development. Without going into the evidence in detail, it is sufficient merely to say that the finding of the court in this respect is sustained by uncontradicted evidence. Berry, the defaulting trustee, was plaintiff's only witness, and his evidence signally fails to sustain the claim of the plaintiff in this behalf. We do not think this testimony is justly subject to plaintiff's criticism that it is evasive or untrue, but, if it is, plaintiff certainly is in no position to complain, for it is the only evidence in the case, and if it fails to sustain plaintiff's contention, it is his misfortune, and should not be taken against defendants.

If, however, the evidence showed that these amounts of money were trust funds belonging to the Haley estate, and that they were misappropriated by Berry, the trustee, they were not the funds with which Berry acquired the Kokomo Mine. This mine

was not secured by him as the result of the contract with the Pioneer Mining Company and its promoters, who, at the time, held an option on the mine from its owners. If it be true, as plaintiff claims, that these advances were part of Haley trust funds, and were paid out by Berry under his written contract with the lessees and holders of the option, the mine was not acquired thereunder, but, on the contrary, Berry, because of his dissatisfaction, withdrew from this contract, and all such sums of money as he may have advanced thereunder, amounting in the aggregate to nearly one hundred thousand dollars, were by the contract forfeited by him and were a total loss. His withdrawal from the contract may have been the indirect cause of the forfeiture of the option by the owners, with whom Berry entered into the contract under which this large sum of money was invested, but that is not important.

But plaintiff insists that, since Berry afterwards secured another option upon the mine and complied therewith and obtained a deed of it, upon the familiar principle that equity will regard and treat that as done which ought to have been done, he says it is the duty of the court here to impress upon this subsequently acquired property, which ultimately passed to Berry's trustee in bankruptcy, a lien for these previous advances which had been made under an entirely different contract. The argument further extended is that, since, under Berry's contract with the holders of the option, they agreed to obtain a new option from the owners running directly to Berry, to be held by him as collateral security for the advances Berry should make, and since Berry might have advanced, though he did not, enough money to enable the holders to obtain a deed of the Kokomo Mine, and since Berry, had he received the new option to be held as collateral security, might have obtained

possession of the mine and acquired title to it by enforcing the collateral security for his advances, equity, therefore, will regard all these things as done because they ought to have been done. We fail to appreciate this species of logic as applied to the facts of this case. As a matter of fact, as far as this record discloses, the new option which was designed, had it been delivered, as collateral security for Berry, was never given. Berry withdrew from the contract, as he had a right to do, without incurring any further liability to any person. The withdrawal did not directly, or even necessarily, result in the forfeiture of the option which the Pioneer Mining Company and its promoters held. They might have secured money from other sources and paid the purchase price stipulated in the option, and made compliance with the other things which they were required to do. They did not do so. The facts upon which it is supposed the equitable principle should operate are absent from this record.

Besides, if it be true that, as between Berry and his beneficiaries under the Haley trust, the Kokomo Mine should be impressed with a preferential lien, it would be so only because the Haley trust funds were used in its purchase. The fact is, and the court so found upon uncontradicted evidence, that the money with which the Kokomo Mine was purchased under the option which Berry obtained from its owners was trust property of other estates which Berry held, and not trust property of the Haley estate at all.

For another reason, the judgment as to these two items was right. Among the securities belonging to the Haley estate, and which Berry, as trustee thereof, had in his possession, were four mortgages aggregating about $25,000.00. Berry, at the same time, was acting as agent for Reverend Henry

W. Foote. Mr. Foote had some additional moneys to invest, and, as the result of negotiation with Mr. Berry, he bought these four mortgages and gave to Berry a check therefor, which the latter deposited in bank in his general trust account. The mortgages, some of which were in Berry's name as trustee of the Haley estate, were not endorsed or manually delivered to Foote; but Berry entered upon his books, in the appropriate place, the fact of the transfer, and he testifies that both he and Mr. Foote considered the sale as in all respects complete. Berry retained physical possession of the mortgage papers and securities, as Foote's agent, and from time to time collected interest thereon and paid it to Foote. After this purchase by Foote, Berry sold these mortgages to other persons, and continued thereafter to pay interest on them to Foote, and interest on the proceeds of the sale to the Haley estate.

The plaintiff claims that there was no completed sale by Berry to Foote of these mortgages, and that they still remained the property of the Haley estate, and that their subsequent sale, for cash, which cash was commingled by Berry with other trust funds, still belonged to the Haley beneficiaries; and plaintiff further claims that a part of the proceeds of such second sale, or resale, constituted the first two items aggregating about $11,000.00 already discussed, and additional sums, amounting to about $21,000.00, which were invested in worthless mining stock, which passed to Berry's trustee in bankruptcy. This property, probably because it was worthless, plaintiff waives his lien upon, and asks that the lien be impressed upon the Kokomo Mine, which is the only property of value belonging to the Berry estate—at least, the only property in Colorado which possesses any value.

We think the court was right in holding that the sale of the mortgages from Berry to Foote was, in equity, a completed sale. Certainly where plaintiff in this equitable action seeks to enforce equitable rights through equitable remedies, Berry's trustee in this case has the right to invoke the aid of equitable rights and remedies in his behalf. Foote parted with $25,000.00 of his money in what he supposed was the purchase of these mortgages, and the contract of sale was between Berry, as the Haley trustee, and Foote, acting in his individual capacity. Berry, as trustee under the Haley will, had the right to make this sale and convey good title to the purchaser, who was not under any obligation to see to the application of the purchase money. It was not a case where the beneficiary, upon ascertainment of the fact that his trustee had misappropriated the proceeds of sale of these securities, had a right, under the will, to disaffirm that act and hold Foote responsible; but, as to them, this was, not only as between Berry and Foote, but as between Foote and themselves, a completed sale.

Complaint is also made by plaintiff that the court did not permit him to trace these mortgages, after their acquisition by Foote, into property belonging to the Berry estate. The court did not permit any further tracing of the mortgages themselves, but did permit the plaintiff to trace the proceeds of the Foote purchase—that is, the money which Foote paid to Berry—into the property of the insolvent estate. That was done, and $21,000.00 were so traced into worthless securities which are now in the hands of Berry's trustee in bankruptcy, exactly in the same form they were when Berry received them. Plaintiff asserts, as a principle of equity, that he may waive his right to these worthless se-

curities and have a preferential lien upon the property of the estate generally, because the Berry estate had the benefit of the trust money. For this position, he relies upon several of our own decisions. —*First National Bank v. Hummel,* 14 Colo. 259; *Hummel v. First National Bank,* 2 Col. App. 571; *Holden v. Piper,* 5 Col. App. 71; *McClure et al. v. La Plata County,* 19 Colo. 122; and *Hopkins v. Burr,* 24 Colo. 502. By these decisions, it is established that it is not necessary to the enforcement of the doctrine here invoked that the identical money shall be traced and found, before a trust may be impressed. The principle of these decisions would be applicable here if the Berry estate had been augmented by, or received the benefit of, the Haley trust funds. And the effect of all the decisions, so far as the principle is applicable to the case in hand, is that if the Berry estate, now in the hands of his trustee in bankruptcy, has received and retained the benefit of the Haley trust funds; that is, if either the Haley money, or property purchased with the Haley money, passed to the trustee in bankruptcy, or if this fund, or its equivalent, has in some way gone into and benefited the Berry estate, or the proceeds of the sale of the mortgage securities to Foote has so passed, such estate should be impressed with a preferential lien. This equitable doctrine will not be defeated merely because money has been mingled with other money of the estate.

But, in the present case, the funds in question have been traced into specific property now in the hands of the trustee in bankruptcy, which is entirely worthless. It never augmented Berry's insolvent estate. The estate got no benefit whatever from it, and the plaintiff here, as the trustee of the Haley estate, will not be permitted, by waiving his right

to a lien upon this worthless property, to assert a preferential lien upon the general assets of the Berry estate, which in no wise has been augmented or swelled by the Haley funds. Counsel is mistaken in supposing that our decisions referred to are authority for any such principle as he invokes. Our attention has not been called to the decision of any court which goes to the length to which he claims the principle should be extended. In the opinion we have not paused to point out, what may be apparent, the inconsistent positions taken by plaintiff on several of the questions mentioned. We prefer to decide the cause on the merits.

Our conclusion is, that Berry had the right to withdraw from his contract with the mining company. The contract itself so provided. Even if this withdrawal were wrong, it did not necessarily, and, so far as the proof shows, did not, contribute to the forfeiture of the original bond and option by the owners of the property. All moneys, if any, belonging to the Haley estate, which Berry misappropriated in his advances to the holders of the first option, were a total loss to him, and to the Haley estate. When Berry afterwards, by a new contract, acquired the Kokomo Mine, the purchase price of which was made up of trust funds belonging to other estates, this circumstance does not entitle the Haley beneficiaries to a prior and superior lien, because Berry also misappropriated their funds under another option which had previously expired. Plaintiff may not waive his lien to the specific property which may have been acquired by the Haley funds and transfer it to the Kokomo Mine, in the absence of a showing that the Berry estate ever received any benefit from such funds, or that it was augmented thereby, and particularly where it appears that other trust moneys were used in the acquisition of the

property.—*Litchfield v. Ballou,* 114 U. S. 190. There is no equity in plaintiff's case.

· The judgment of the court, being in accordance with our views, is affirmed.

*Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GARRIGUES concur.