## No. 12,009.

HOLBROOK IRRIGATION DISTRICT *v.* FIRST STATE BANK OF CHERAW, ET AL.

Decided June 11, 1928.

Mr. E. W. McDaniel, for plaintiff in error.

Mr. Leo P. Kelly, Mr. Charles M. Rose, for defendants in error.

*Department One.*

Mr. Justice Walker delivered the opinion of the court.

This action was brought by the plaintiff in error against the defendants in error, for the purpose of obtaining a decree that a deposit standing to the credit of plaintiff in error in the First State Bank of Cheraw, in the sum of $5,412.34 should be paid by the state bank commissioner to the plaintiff in error, as a preferred claim upon all the assets of the bank. The bank suspended payment on August 24, 1925, being then insolvent, and on that date the state bank commissioner took possession of its books, records and assets, for the purpose of liquidating its affairs. At the time the bank suspended, there appeared upon its books a general checking account in the name of the "Holbrook Irrigation District, I. W. Strickler, Secretary." The items upon this account extended from September 15, 1919, to August 6, 1925. On December 31, 1920, however, there was no money in the account. From that date until August 6, 1925, deposits in varying amounts appeared, with only two checks, the last of which is January 6, 1923, in the sum of $1,578.57. In the year 1925, the deposits aggregated approximately $500; in the year 1924, approximately $900; and the balance was scattered over the years 1922 and 1923. The theory of the complaint was that Strickler, as secretary of the Holbrook Irrigation District, had collected monies due the district, and without the knowledge or consent of its officers, had unlawfully deposited those monies in the Cheraw bank, instead of remitting them to the county treasurer, who, under our statutes, is the lawful treasurer of the irrigation district, and that, as Strickler was the cashier and active manager of the bank, the bank must be deemed to have accepted such deposits

with knowledge that they were unlawfully deposited with the bank, and therefore that such deposits must be treated as a trust fund belonging to the irrigation district. The complaint alleged, among other things, that: "At the date it closed its doors * * * the said bank was in possession of cash and assets composed in part of said funds of said irrigation district, having a cash value largely in excess of the said sum so on deposit, to the credit of said irrigation district." The answer denied this allegation and affirmatively averred that: "No part of said deposit came into the hands of the defendant Grant McFerson as liquidator of said bank."

The case was tried to the court below upon an agreed statement of facts, supplemented by certain evidence. The agreed statement of facts shows the deposit as above stated, and by such statement of facts it was stipulated: "That the money or credits represented by said credit balance was mixed and commingled with the general funds of said bank and was used in the usual course of business of the bank."

It was also stipulated that on the date when the bank closed there were in it the following items: Cash items, $393.21; due from reserve banks, $3,138.35; cash, $912.62; Liberty bonds, $600. It was also agreed that on various dates which had been specifically mentioned in the answer, including August 24, 1925, the cash value of the assets of the bank was in excess of the amount of plaintiff's deposit. Plaintiff introduced evidence tending to show the collection of monies by the secretary, and the lack of knowledge of the directors as to the deposit in the bank. Plaintiff also called the deputy state bank examiner in charge of the bank, who testified that the assets of the bank at the time it closed were of the value of about $40,000, not including the stockholders' liability, and that such assets consisted of money, promissory notes, one piece of real estate, and banking house securities. This witness also testified to the amounts of cash, cash items, Liberty bonds, and credits with correspondent

banks, on August 15, 1924, September 3, 1924, June 5, 1925, August 15, 1925, and August 25, 1925. He identified the ledger account showing the deposits as hereinabove set forth. He testified upon cross-examination that the books of the bank did not show the source or exact character of the deposits. From his testimony it also appeared that of the $3,138.35 due from reserve banks when the Cheraw bank closed, $2,546.67 was directly traceable to a deposit by the Holly Sugar Company, on August 15, 1925, and $410.04 was directly traceable to a draft upon one Libby McNeil, and that none of the balances in correspondent banks at the date the bank closed, arose out of the transfer of surplus funds of the Cheraw bank. This witness was also called for direct examination by the defendants. The trial court found the issues for the defendants and dismissed the complaint.

The claim of the plaintiff in error to a preference, to the full amount of its deposit, is urged upon two grounds: (1) That the district is entitled to the full amount of its claim because the assets of the insolvent bank are impressed with a trust in favor of the district to the amount of the deposit; and (2) because the monies due the district from the insolvent bank have a preference as monies due the sovereign.

It may be admitted, although we do not find it necessary to so decide, that under our statutes the secretary of the district was under a legal duty to transmit the funds of the district, collected by him, to the county treasurer, and that when he violated that duty by depositing them in a bank of which he was cashier and acting manager, such funds became, in the hands of the bank, trust funds equitably belonging to the district. As supporting this contention of plaintiff in error, see the following cases: *Crawford County Com'rs v. Strawn,* 157 Fed. 49, 15 L. R. A. (N. S.) 1100; *First Nat. Bank v. Bunting,* 7 Idaho, 27, 59 Pac. 929; and many cases collected in annotation to *Maryland Casualty Company v. Rainwater,* 51 A. L. R. 1332, at page 1342.

Apparently it is the view of plaintiff in error, that, having shown that the bank received trust funds, and that they were mingled by the bank with its other funds, and used by it in the course of its business, and that when it suspended business it was possessed of assets having a cash value in excess of the amount of the trust fund, this was a sufficient showing to entitle the district to have all of the assets of the bank impressed with a trust in favor of the district, to be enforced by the allowance of a prior claim, to be paid out of the cash realized from the sale of those assets. We do not find in the brief of plaintiff in error any other theory advanced as a ground for reversing the judgment. We shall therefore not consider any possible claim which might have been made on behalf of the plaintiff in error, under the presumption that trust funds are the last withdrawn from a mingled fund, to any part of the cash, cash items, or funds in correspondent banks, which were on hand when the state bank commissioner assumed possession of the bank. We may observe however, that it is obvious from the facts which we have stated, that at least as to the credits with correspondent banks, the source of such funds was affirmatively shown to be other than the plaintiff's deposit. At all events, we shall test the right to reverse this judgment only upon the theory that has been advanced by the plaintiff in error.

The ground upon which a trust will be impressed in favor of the owner of a trust fund, upon the insolvency of the trustee, and as against his general creditors, is that the assets comprising the insolvent estate at the time it comes into the hands of a receiver, assignee or other representative of the insolvent, include the trust fund, either in its original form or as represented by other funds or property. 'It is in fact a form of equitable property right, and is not a preference given on account of the nature of the liability of the trustee. This we think is the holding of the following decisions: *McClure v. Commissioners,* 19 Colo. 122, 34 Pac. 763; *Holden v.*

*Piper,* 5 Colo. App. 71, 37 Pac. 34; *Banks & Bros. v. Rice,* 8 Colo. App. 217, 45 Pac. 515; *Meldrum v. Henderson,* 7 Colo. App. 256, 43 Pac. 148; *Hopkins v. Burr,* 24 Colo. 502, 52 Pac. 670; *Cotting v. Berry,* 50 Colo. 217, 114 Pac. 641. It follows that the owner of the trust fund who seeks to reclaim it from the estate of the insolvent, has the burden of proving, as one of the essential facts of his case, that his money, or other money or property into which his money was transmuted, is present in the estate. *McClure v. Commissioners, supra; Schuyler v. Littlefield,* 232 U. S. 707, 34 Sup. Ct. 466, 58 L. Ed. 806. In the McClure case it was said that the facts necessary to raise the trust "must be proved with clearness and certainty." Under these rules, while the character and extent of the evidence to establish the presence of the trust property in the estate may vary with each case, it is an indispensable requirement that the ultimate fact be in some manner proved. Plaintiff in error appears to contend that if it appears that the trust money, at the time it was received, was mixed with other funds of the trustee, this dispenses with the necessity of other proof that such funds are represented in the estate as it is finally constituted at the time it passes to the assignee on insolvency. We do not think that the Colorado decisions relied upon by plaintiff in error sustain this contention. In *First Nat. Bank v. Hummel,* 14 Colo. 259, 23 Pac. 986, the decision rested entirely upon the complaint to which a demurrer had been interposed. It was alleged in the complaint in that case that the sum claimed as trust money remained in the insolvent bank, and passed to the defendant when he took possession of it. The character of evidence required to sustain such allegation could not have been before the court. In the second Hummel decision, 2 Colo. App. 571, 32 Pac. 72, the evidence introduced to support the complaint showed that the trust fund went into the possession of the banker a few hours before his death, and this was regarded as sufficient to show that such sum was in fact in the estate

which passed to the administrator upon that day. The holding was so construed in *Holden v. Piper, supra,* at page 73 of the report, by the same judge who wrote the opinion in the Hummel (Appeals) case. It must be admitted that *Hall v. Beymer,* 22 Colo. App. 271, 125 Pac. 561, lends countenance to the contention of plaintiff in error, as it appeared in that case that the trust fund, which was in the form of a draft, was used by the insolvent bank to apply on its indebtedness to a correspondent bank. If that case was intended to hold that it is not necessary that the trust fund shall appear in the estate at the time it passes to the assignee, we must decline to follow it, because it is at variance with the other Colorado decisions, as well as with the overwhelming weight of authority in other jurisdictions. *Banks & Bros. v. Rice, supra,* is strongly relied upon by plaintiff in error. In that case it was stipulated that the trust fund was used, among other things, "in the purchase of new goods and materials" constituting a part of the stock upon which the trust was impressed. This was regarded by the court as sufficient, when aided by the presumption stated in the opinion in that case, to show that the trust fund was as a matter of fact represented in the property in the hands of the assignee. *Holden v. Piper, supra,* is not substantially different in its facts from the instant case. In that case, as here, it was stipulated that the trust monies were used by the banker, of whom the defendant was assignee, in his general business, mingled by him indiscriminately with his other funds, and treated as personal assets in the transaction of his business and in the payment of his debts. These facts were held insufficient to charge the insolvent estate with a trust, the court saying: "To entitle a trust creditor to a preference, it must be satisfactorily established that the property of the insolvent remaining for distribution includes the proceeds of the trust estate."

Tested by the requirements which we have stated, we think the plaintiff in error failed to prove the essential

fact, that the irrigation district deposit was to be found in some form or other in the assets of the Cheraw bank at the time the state bank commissioner took possession. Plaintiff in error made no attempt whatever to trace such funds. There was no evidence to show in what form they came into the bank. The evidence, as we have stated above, discloses that the credit balances with correspondent banks came from a source other than the deposit of plaintiff in error. No claim is made to the actual cash, by the plaintiff in error, on the ground that it represents the remains of the trust fund, and no attempt was made by it to show the relationship between the actual cash and the deposit. The other assets of the bank, being the main sources from which plaintiff seeks to reclaim its money, were shown to consist of Liberty bonds, banking securities, notes, and one piece of real estate. As to when or how any one of the assets was acquired, there is no evidence. It is not even shown that their acquisition by the bank was subsequent to the making of plaintiff's deposit. It cannot therefore even be presumed in this state of the record, that these assets were purchased or acquired by the use of the general fund with which plaintiff in error's money was mingled. It is wholly consistent with stipulated facts and the evidence, that plaintiff's money, after being mingled with what is called the general funds of the bank, went entirely to pay debts or expenses or the checks of other depositors. Upon these facts the court below would certainly not have been justified in holding that the irrigation district had proven its right to take any part of the bank assets to the exclusion of its general creditors. It seems to us a clear case of failure of sufficient proof of one of the essential facts of the plaintiff's case. To hold otherwise would be to hold that proof merely of the receipt of the trust fund, by the trustee, and that his estate at the time of his insolvency was equal in value to the trust fund, would entitle the cestui que trust to a preference over the general creditors. The law is not so. In addition to

the Colorado cases, see for an exhaustive review of the authorities upon this proposition, the note beginning at page one, L. R. A. 1916 C; and for a statement of the rule as established by the weight of authority, 26 R. C. L. 1355.

As for the contention of plaintiff in error that it is entitled to a preference under the rule of the common law, which gave priority to the debts of the sovereign, we do not find it necessary to pass upon the existence or the limits of that rule in this state. While an irrigation district is a public corporation, we do not think that it is in any true sense a branch or subdivision of the sovereignty. Its purposes are chiefly private, and for the benefit of private land owners. See *Interstate Co. v. Montezuma District,* 66 Colo. 219, 181 Pac. 123. In *Colorado I. & R. Co. v. Riverview Drainage District,* 83 Colo. 468, 266 Pac. 501, this court held that a drainage district (which like an irrigation district has a limited power of taxation) is not a subdivision of the state or a mere agency created for governmental purposes, and that such district can be sued without a statute expressly authorizing such suit. In *United States Co. v. McFerson,* 78 Colo. 338, 241 Pac. 728, this court, explaining the ground upon which the sovereign's preference rested at common law, quoted the following language from *State v. Madison State Bank,* 68 Mont. 342: "The common law rule has its foundation in motives of public policy, in order that the state's funds may not be lost but may be available to meet the expenses of government and discharge the state's obligations."

Clearly, an irrigation district, under our statutes, is not within the reason of this prerogative.

The judgment is affirmed.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE BURKE, and MR. JUSTICE WHITFORD, concur.