**RAUCH v. HOFFMAN.**

No. 5798.

Circuit Court of Appeals, Third Circuit.

Oct. 9, 1936.

Joseph Levy, of Somerset, Pa., for appellant.

Leland· W. Walker, of Somerset, Pa., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court, holding the bank liable for the purchase price of four bonds left with the bank "for safe keeping only" under the following circumstances:

On July 10, 1922, Emiline B. Rauch left with the Peoples State Bank of Boswell five United States Liberty bonds of the value of $100 each "for safe keeping only," for which the bank gave her a receipt.

On April 9, 1929, with the approval of the Comptroller of the Currency and the Department of Banking of Pennsylvania, the First National Bank of Boswell purchased all the property and assets of every kind of the Peoples State Bank, and on the same day the bonds of Mrs. Rauch, along with other property, were delivered by the State Bank to the National Bank. Thereafter the National Bank held the same relation to the bonds as had the State Bank.

The last time that Mrs. Rauch saw the bonds was on September 29, 1931. She presumably had gone to the bank from time to time to cut coupons from them.

On January 21, 1932, the cashier of the First National Bank without the consent or even the knowledge of Mrs. Rauch, or her legal representative, sold four of the bonds to Josiah and Rose Lohr, customers and depositors of the bank, and charged their account with the purchase price of $400.24. On the following day the cashier drew his check payable to the order of Post & Flagg, brokers, for $402.08 for the purchase of four similar bonds to take the place of the bonds of Mrs. Rauch, which he had sold, but on January 26, 1932, .before the check was presented for payment, the bank was found to be insolvent and its business was suspended. Mr. R. G. Holsing was appointed receiver of the bank by the Comptroller of the Currency.. He later resigned as receiver and Mr. Park L. Hoffman, appellant, was appointed in his place. The check has never been paid.

Mrs. Rauch died January 2, 1932, nineteen days before the cashier sold the bonds, and this suit was brought by the administrator of her estate to recover the purchase

price of the bonds. The case was tried to the court and jury, and at its conclusion the court directed a verdict for the plaintiff for $402.08. A motion for a new trial was refused. Judgment was entered on the directed verdict, and the case is here on appeal from that judgment.

The plaintiff contends that the deposit of these bonds created an express trust and augmented the assets of the bank.

The defendant, on the other hand, contends that the mere leaving of the bonds with the bank did not create a trust, either express or implied, but, if it did, the conversion of the bonds was only a breach of the trust, and, when the proceeds of their sale went into, and were commingled with, the general funds of the bank, where they could not be traced to any special fund or specifically identified, the owner was not entitled to a preference over the general creditors of the bank; and that, as the transfer of the funds from the account of the purchaser of the bonds to the general fund of the bank was a mere bookkeeping transaction and no money was actually paid in, to increase the assets of the bank, the owner in consequence was not entitled to a preference.

The learned District Judge rejected the contention of the receiver of the bank and held that the deposit was a special deposit which augmented the assets of the bank when it received the price of the bonds from its customer and entitled the owner to a preference.

The receiver says that it is necessary for the appellee to establish the following three things before he can recover: "(1) That the bank received the property in a fiduciary capacity; (2) that the property actually augmented the existing assets, as distinguished from a mere bookkeeping credit; and (3) that the fund is traceable as an identifiable res in the hands of the receiver."

He relies upon the following cases to support his contention: National City Bank v. Hotchkiss, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115; Schuyler v. Littlefield, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806; Cunningham, Trustee of Ponzi, v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873; St. Louis & San Francisco R. R. Co. et al. v. Spiller et al., 274 U.S. 304, 47 S.Ct. 635, 71 L.Ed. 1060. But these cases, when correctly interpreted, do not support his position. In the Hotchkiss Case, a loan was made by the bank to a customer and the money was placed to his credit in a general account to be used in taking up certain securities. The bank closed, and it was held that, when the funds entered the stream of the bank's general property, it could no longer be identified, and the depositor had to share with other general creditors on a pro rata basis. There was here a pure relation of debtor and creditor between the bank and the depositor. In the case of Cunningham, Trustee, v. Brown, Ponzi advertised widely for the loan of money and promised to return the money with large interest at any time the lender desired it. The money thus received was deposited in a bank in a general fund. When this fund was depleted, it was replenished by other money secured in the same way. When the Ponzi bubble burst, certain people who had loaned money to Ponzi tried to get their money from the bank on the ground that they had elected to rescind the contract with Ponzi on the ground of fraud. The court said that they had two remedies which they could have pursued for the recovery of their money: They could have followed the money wherever they could trace it and could have asserted the right of possession to it on the ground of a resulting trust in their favor, or they could have established a lien for what was due them in any particular fund of which he had made it a part. They did not do either and consequently failed. The receiver further cited Jennings v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 79 L.Ed. 869, 99 A.L.R. 1248; Old Company's Lehigh v. Meeker, 294 U.S. 227, 55 S.Ct. 392, 79 L.Ed. 876; Adams v. Champion, 294 U.S. 231, 55 S.Ct. 399, 79 L.Ed. 880, and many others, but in all of them there existed the relation of debtor and creditor between the bank and the depositor which distinguishes them from the case at bar.

Mrs. Rauch simply left the bonds with the bank "for safe keeping only." The bank was the mere custodian of the bonds, and title to them never passed to the bank. Mrs. Rauch or the administrator of her estate had the right to follow them in the original, or in some other substituted, form. The right of the administrator to pursue the bonds, or the money into which they had been converted into the hands of the receiver of the bank, depends upon the fact that title to the bonds, or the money representing them, was in the administrator, and not upon the relation of debtor and creditor, or upon the ground of a debt due and

owing, Cox v. St. Anthony Bank & T. Co., 41 Idaho, 776, 242 P. 785; Windstanley v. Second Nat. Bank, 13 Ind.App. 544, 41 N. E. 956; Andrew v. State Bank, 205 Iowa, 1064, 217 N.W. 250, or of compensation for the loss of property, Myers v. Matusek, 98 Fla. 1126, 125 So. 360; Daughtry v. International Bank, 18 N.M. 119, 134 P. 220, or on the ground of unlawful conversion of property, Hanover Nat. Bank v. Thomas, 217 Ala. 494, 117 So. 42; Holbrook Irr. Dist. v. First State Bank, 84 Colo. 157, 268 P. 523. Title never passed to the bank. The administrator is merely seeking to recover his own property or the proceeds thereof, and it is the duty of the court to lend its aid to the owner in reclaiming his property. Macy v. Roedenbeck (C.C.A.) 227 F. 346, 353, 356, L.R.A.1916C, 12. In that case Judge Elliott, speaking for the Circuit Court of Appeals for the Eighth Circuit, said:

"Under the earlier rule petitioner would have been required to identify it [the property in question] as the very property which he had confided to another. The modern and more equitable doctrine permits the recovery of a trust fund from one not an innocent purchaser, and into any shape into which it may have been transmuted, provided he can establish the fact that it is his property, or the proceeds of his property, or that his property has gone into it and remains in a mass from which it cannot be distinguished. Spokane County v. First National Bank [of Spokane et al. (C.C.A.) 68 F. 979, 982].

"This more recent doctrine follows the rule announced in Re Hallett's Estate (Knatchbull v. Hallett) 13 Ch.Div. 696, which is to the effect that, if money held by one in a fiduciary character has been paid by him to his account at his bank, the person for whom he held the money can follow it and has a charge on the balance in the banker's hands, and that if the depositor has commingled it with his own funds in the bank, and afterwards drawn out sums upon checks in the ordinary manner, he must be held to have drawn out his own money in preference to the trust money, and that if he destroyed the trust fund by dissipating it altogether, there remains nothing to be the subject of the trust; that only so long as the trust property can be traced and followed into other property into which it has been converted, does it remain subject to the trust."

Judge Elliott cited many cases, both federal and state, sustaining this doctrine.

There is no question about the facts in this case nor about the fact that the bonds were sold and that the proceeds went into the funds of the bank, where they still remain in the possession of the receiver.

With the District Judge, we think that the proceeds of these bonds augmented the assets of the bank. They certainly reduced its liability to others.

The administrator is entitled to recover them, and the judgment of the District Court is affirmed.